Present:  All the Justices

ROBERT C. NUSBAUM

v.  Record No. 061277

CANDACE L. BERLIN, ET AL.

                    OPINION BY JUSTICE CYNTHIA D. KINSER
                              March 2, 2007
ROBERT C. NUSBAUM

v.  Record No. 061784

CANDACE L. BERLIN, ET AL.

     FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
            J. Warren Stephens, Judge Designate


     The circuit court entered judgment imposing, as a

monetary sanction against Robert C. Nusbaum, an attorney,

for his misconduct during a jury trial, an award of

attorneys' fees and costs to the opposing parties.  In the

same judgment order, the circuit court found Nusbaum guilty

of criminal contempt of court in violation of Code § 18.2-

456(1) and imposed a fine of $250 pursuant to Code § 18.2-

457.  Nusbaum petitioned for an appeal to this Court

pursuant to Code § 8.01-670(A)(3) from the circuit court's

judgment imposing the monetary sanction.  Nusbaum also

appealed the conviction for contempt of court to the Court

of Appeals of Virginia pursuant to Code § 19.2-318.  We

awarded Nusbaum an appeal, certified the appeal of his

contempt of court conviction from the Court of Appeals to

this Court pursuant to Code §§ 17.1-409(A) and -409(B)(2), and paired the two cases.  We will reverse the circuit court's judgment imposing the monetary sanction because a trial court's inherent authority to discipline an attorney does not include the power to punish the attorney by assessing a monetary sanction consisting of an award of attorneys' fees and costs.  We will affirm the circuit court's judgment convicting Nusbaum of contempt of court and imposing a $250 fine.

## I.  FACTS AND PROCEEDINGS

The incident giving rise to both the assessment of the monetary sanction and the conviction for contempt of court occurred on December 12, 2005 during a multi-week civil jury trial in the Circuit Court of the City of Virginia Beach.  Nusbaum and Linda S. Laibstain represented the two plaintiffs.  Everette G. Allen, Jr., along with another attorney, represented three of the four defendants.[1]

During Allen's cross-examination of one of the plaintiffs, Laibstain objected several times to alleged discrepancies in certain documentary evidence.  Allen countered at one point by stating that Laibstain's

---

[1] Another attorney represented the fourth defendant. On appeal, only the three defendants represented by Allen and his co-counsel have entered an appearance.  All references in this opinion to "the defendants" pertain only to those three defendants unless otherwise indicated.

2

complaints were not true. Laibstain then requested a brief bench conference. Nusbaum claims that, during this bench conference, which was not recorded, Allen again accused Laibstain of being untruthful. When the bench conference concluded, the circuit court took a recess. After the jury left the courtroom, the circuit court admonished the attorneys by stating:

> Ladies and gentlemen, the [c]ourt is not going to tolerate the lack of civility between and among the lawyers. It's uncalled for. And with any objection that is required by any or all lawyers, the [c]ourt will hear the motion and make the decision.
>
> . . . .
>
> And any movement towards touching or shoving will be dealt with properly.

Following additional cross-examination of that plaintiff and a subsequent luncheon recess, the circuit court informed counsel and the parties, outside the presence of the jury, that the bailiff had advised the court about an incident that had occurred immediately after the bench conference earlier that morning. The court then asked the bailiff to state on the record what she had observed. The court offered to place the bailiff under oath, but no one responded. The bailiff then gave this statement in open court:

3

[W]hile all parties were at the side bar . . . , I saw Mr. Nusbaum get in Mr. Allen's face. Mr. Allen backed up, but he couldn't go any further because his back was to my podium, and I saw Mr. Nusbaum get in his face and shove him with the elbow. And I grabbed Mr. Nusbaum by his forearm, and I said, that was inappropriate. You will not do that again. And [Mr. Nusbaum] stated to me, "I thought it was appropriate."

The circuit court inquired whether anyone wanted to ask the bailiff questions. Allen responded:

Your Honor, I will just say I didn't take any offense at that. This is – we have some heated discussions sometimes and sometimes lawyers get a little frazzled. And a lawyer bumps up against me, that doesn't bother me.

Mr. Nusbaum has always been a gentleman with me and certainly I overlooked it, didn't think any more about it. But she has – the deputy has recited it the way it happened.

But I wouldn't – I hope the [c]ourt is not troubled by it.

The following colloquy then occurred:

THE COURT: The [c]ourt is troubled by it, Mr. Allen.

MR. ALLEN: Then I'll sit down.

THE COURT: I appreciate your attitude, but the [c]ourt is troubled by it, very troubled.

Mr. Nusbaum.

MR. NUSBAUM: When Mr. Allen told the [c]ourt that Ms. Laibstain was not being truthful, I objected to that. You speak about a lack of civility; I can't recall ever telling a judge that another lawyer wasn't being truthful. I could disagree with what he said, I could have a different version testify [sic], but I never

4

accused a fellow lawyer before the [c]ourt of being untruthful, and I resented it very much. And whatever – take a step forward, I would probably do it again under the same circumstances.

I did not mean to threaten Mr. Allen physically and I'm sure he didn't feel threatened, but when somebody says about my co[-]counsel that they are not telling the truth, I feel that it's my duty to step forward and make it clear that I object to that.

THE COURT:  Thank you, Mr. Nusbaum.

The jury is sitting in the box and had an opportunity to observe all of this.  Now, whether they did or not, the [c]ourt does not propose to make that inquiry of the jury.  That doesn't have anything to do with them.

As the bailiff said, the conduct was inappropriate, and the [c]ourt is going to declare a mistrial and charge the plaintiffs with the trial expense for the days that the [c]ourt has been in session.[2]

. . . .

MS. LAIBSTAIN:  Your Honor, the one thing that we would like to do is object to the assessing the cost.

. . . .

THE COURT:  . . . It's the most troubling experience I have ever had. . . . I didn't see the occurrence.

I think [the bailiff] – what she said, I have no reason but to accept [her] version of what happened.  And the [c]ourt cannot let this thing go without declaring a mistrial and

---

[2] The plaintiffs had unsuccessfully moved for a mistrial prior to the incident at issue but for other, unrelated reasons.

5

assessing the plaintiffs with the costs of the proceedings for the four or five days we've been in trial.

Is there anything further?

. . . .

MS. LAIBSTAIN: Your Honor, I think that we would like to be heard on that because –

. . . .

MS. LAIBSTAIN: We'd like to object to that.

THE COURT: I think that it should be done promptly. I'll give you a day.

Laibstain also advised the circuit court that she wanted to retain counsel to represent her and Nusbaum.

Nusbaum again objected to the basis of the circuit court's decision to declare a mistrial:

MR. NUSBAUM: If Your Honor please, I want to just say a sentence or two for the record about the incident that the [c]ourt saw fit to address his basis for a mistrial.

I'd like the record to show that the incident occurred at – under the bench in a side bar conference where the judge was present, along with all four or five attorneys, and as I understand, Your Honor, you did not observe anything personally?

THE COURT: I merely – I saw [the bailiff] take your arm and [say] something to you that conduct is inappropriate or something like that. That's the first attention I had, that's the only thing I saw, and that's why I asked her to recite what had happened.

MR. NUSBAUM: Well, as Your Honor knows, we had already moved for a mistrial not on that

6

basis, of course; it seems to me – and I respectfully want to put this in the record – that the [c]ourt has overreacted to [the bailiff's] experience or perception of what happened since it was apparently not significant enough to even attract her attention when you were standing right there within two or three feet of us, and so I do want to say that I don't feel like Mr. Allen was personally threatened in any way, I don't think he would even tell you that he felt threatened by the fact that we may have bumped each other.

I do acknowledge that the [bailiff] did take me by the arm as we were leaving to return to our tables and saying what she thought had happened was inappropriate, and I disagreed with her. But beyond that, I don't know that there is any conduct that would possibly be the basis for a mistrial. It was in the presence of the jury. There's no indication that the jury saw it or was disturbed by it.

THE COURT: The jury was in the box.

MR. NUSBAUM: I understand. But Your Honor didn't see it, it was up there in the cluster of the people that were standing very close to each other and there's no indication that the jury was aware of anything of the kind.

So my objection is not to the granting of the mistrial, but the basis for it that the [c]ourt is saying.

Allen then asked for "'enhanced sanctions' meaning enough reimbursement to truly cover [the defendants] for the money that they will lose because of this continuance." In subsequently filed motions and memoranda, all the defendants urged the circuit court to use its inherent authority to impose sufficient sanctions so as to make them

7

whole and prevent the plaintiffs from benefiting from their counsel's misconduct. Nusbaum, now represented by counsel, filed a written objection to the circuit court's decision to grant the mistrial and assess costs. Nusbaum argued not only that the circuit court had no basis for declaring the mistrial but also that it did not have the authority to impose costs against an attorney for conduct that did not violate either Code § 8.01-271.1 or Rule 4:12(b). He noted that the proposed monetary sanction, if assessed, would exceed the maximum fine allowable in a summary criminal contempt proceeding under Code § 18.2-457.

Nusbaum attached an affidavit to his written objection. In his affidavit, Nusbaum vowed that he never intended to have physical contact with Allen on the occasion in question. Nusbaum explained:

> [T]he sidebar conference having ended, Mr. Allen turned around to return to his seat at defense counsel's table. As I was standing behind him, about to speak to him, and he was moving toward his seat, we bumped, and I believe he stepped back at the instant of contact, understandably leaving [the bailiff] with the impression that he had been shoved or pushed. I said to him quietly at that point that he ought not be telling [the] Judge . . . that [Laibstain] is untruthful. He responded, "Well, she's not telling the truth." Disappointed, I turned around to walk to my seat, and he proceeded to his seat.
>
> As I turned to go to my seat, [the bailiff] walked over and put her hand on my right forearm,

8

as if to get my attention. I stopped, and she said to me, "What you did was inappropriate." Since I had absolutely no sense of any improper physical contact or what she has described as pushing or shoving, I could only conclude that she was referring to the conversation I had just had with Mr. Allen. I responded that I thought it was appropriate. To my astonishment, still not understanding what [the bailiff] was referring to, she said something to the effect that, if it happened again, it would be serious. I was perplexed by her concern, but gave it no further thought.

In an opposing affidavit, Allen challenged Nusbaum's recollection of the incident. Allen asserted that Nusbaum's " 'physical contact' or 'bump' was neither inadvertent, nor was it unintended." Allen stated that, after the bench conference ended, Nusbaum blocked his path and moved within inches of his face. Allen claimed that he stepped back twice until he was positioned against a podium. Then, according to Allen, Nusbaum shoved his elbow against Allen's chest and told Allen that everything Laibstain said was true.

The circuit court reconvened on January 12, 2006 to decide whether to assess attorneys' fees and costs against Nusbaum. Before hearing argument on that issue, the circuit court announced that its decision to declare a mistrial "was compelled by the uncontroverted account of [the bailiff]." The court stated that, based on that account, it had "concluded that Mr. Nusbaum deliberately in

9

the presence of the jury physically attacked Mr. Allen." The court further stated that it was "astounded and troubled that Mr. Nusbaum would execute and tender as an exhibit to his submission his affidavit seeking for the first time to challenge [the bailiff's] testimony." The circuit court then identified the two issues before it as a result of Nusbaum's misconduct: "[I]s the [c]ourt authorized under existing statutes or decisions to impose upon Mr. Nusbaum such monetary sanctions as the [c]ourt had indicated it was considering initially; or . . . is the [c]ourt limited to the contempt remedies as are provided by [Code §§] 18.2-456(1) and 18.2-457 and, if so, the forms thereof."[3]

After each side presented argument, the circuit court determined that it did not have the power to impose "financial sanctions" under the circumstances of the case. The circuit court, however, found Nusbaum guilty of contempt of court under Code § 18.2-456(1) for "shoving counsel" in the courtroom on December 12, 2005 and expressed its intention to punish him in accordance with

---

[3] The circuit court also stated that Nusbaum's contention that the court had improvidently declared a mistrial was moot and not an issue at the January 12 hearing. The court noted that it had given counsel on both sides the opportunity to have the bailiff placed under oath but no one had requested the court to do so; nor had anyone offered to testify about the incident in question.

10

Code § 18.2-457.  The court then stated, "I don't know what you-all's attitude about that is . . . whether you want to be heard at a later time or what with respect to that." Then, before anyone could respond, the circuit court disqualified Nusbaum's law firm from further service to the plaintiffs in the litigation, pursuant to its "inherent authority."  The circuit court then asked, "How do you all want to do the sanctions?"

In response to the circuit court's questions, counsel for Nusbaum reminded the court that, without a jury trial, the maximum punishment for a conviction of contempt of court is a fine of $250 or up to ten days in jail.  His counsel stated, "Well, if Your Honor does not have a jail sentence in mind, I don't think that there would be anything to be gained to have a separate hearing on a $250 fine, if that's what you have in mind."  The circuit court then sentenced Nusbaum by imposing a fine of $250.  At that point, Nusbaum's counsel noted an "objection to the determination of the [c]ourt . . . and to all of the rulings."

Soon after the January 12 hearing, Nusbaum filed a motion asking the circuit court to reconsider its decision to disqualify Laibstain and Nusbaum's law firm from any further representation of the plaintiffs.  Nusbaum

11

challenged the circuit court's inherent authority to disqualify an entire law firm based on the misconduct of one of its lawyers. In a memorandum filed in support of the motion, Nusbaum, however, advised that he was not asking the circuit court to reconsider any other part of its rulings, including the decision to disqualify Nusbaum. All the defendants opposed Nusbaum's motion to reconsider and, in addition, filed their own motions requesting the circuit court to reconsider its decision denying an award of monetary sanctions.

On March 21, 2006, the circuit court heard argument on the parties' respective motions. The circuit court decided to amend its January 12, 2006 ruling and permitted Laibstain and Nusbaum's law firm to continue their representation of the plaintiffs in the litigation. The circuit court further amended its prior decision by imposing as a sanction against Nusbaum an award of reasonable attorneys' fees and costs to all the defendants for their time expended in preparing for and appearing at the January 12 and March 21 hearings.

After the circuit court announced its decision, counsel for Nusbaum stated that he wanted to note specific objections to the contempt of court finding since he had voiced only a general objection to the court's rulings at

the January 12 hearing.  Nusbaum's counsel asked the circuit court to recite in its order Nusbaum's objection to the summary determination of contempt of court on the grounds that, "where the misconduct is not seen by the judge[,] the defendant has a right to be accorded a trial on that particular issue, and the lack of a trial is a denial of due process."  Nusbaum's counsel, however, stated, "I am not asking [the court] at this time to change [its] ruling.  I am simply going to make sure . . . that I have preserved any right of appeal with respect to the contempt finding."  Allen opposed the attempt to interpose objections at that time and argued that the objections were not timely raised at the January 12 hearing and therefore could not be preserved by stating them at this later hearing.

During the final hearing, on March 27, 2006, the circuit court considered the form of its final order and the amount of monetary sanctions to be imposed against Nusbaum.  A discussion again arose concerning the objections to the contempt of court finding that Nusbaum wanted to recite in the final order.  His counsel again stated that he was not requesting the circuit court to reconsider its ruling but that, instead, he merely wanted

the court's order to include the "particulars" of his objection with respect to the contempt of court conviction.

At the conclusion of this hearing, the circuit court entered its final order, imposing as a sanction against Nusbaum an award of attorneys' fees and costs to all the defendants in the total amount of $52,738.88. The order also set forth the circuit court's judgment convicting Nusbaum of contempt of court in violation of Code § 18.2-456(1) and sentencing Nusbaum with a fine in the amount of $250. The parties noted their respective objections to the final order.[4] These appeals ensued.

## II. ANALYSIS

In his two appeals, Nusbaum raises distinct assignments of error challenging the imposition of the

---

[4] Nusbaum, both individually and by counsel, noted the following objections on the final order: (1) the conviction for criminal contempt of court violated Nusbaum's due process rights because it was a summary proceeding with no notice, rule to show cause, or attachment; the alleged contempt was indirect and not personally witnessed by the trial judge; and the contempt charge was not brought by the Commonwealth; (2) the evidence was insufficient to establish beyond a reasonable doubt that Nusbaum intended to engage in any misconduct; (3) the contempt charge should have been dismissed because the conduct could be construed in two ways and Nusbaum submitted an affidavit showing he did not intend to engage in any misconduct; and (4) the circuit court exceeded its inherent power in the circumstances of this case by imposing a monetary sanction, and the amount of the sanction was excessive.

monetary sanction and the conviction for contempt of court. We will address them separately and in that order.

## A.   Monetary Sanction

In this appeal, Nusbaum challenges the circuit court's judgment awarding attorneys' fees and costs to all the defendants as a sanction for Nusbaum's misconduct.  The dispositive issue is whether the circuit court erred by using its "inherent power" to impose the monetary sanction against Nusbaum.

In that regard, Nusbaum argues that, absent a contractual or statutory provision permitting an award of attorneys' fees, a trial court does not have the authority either to make such an award or to impose it as a sanction. According to Nusbaum, the purpose of a trial court's inherent power to discipline an attorney is to protect the public, not to punish the attorney or to compensate the parties; thus, a trial court cannot use such power to impose an award of attorneys' fees as a disciplinary measure.

In response, the defendants acknowledge that this Court has never decided whether a trial court's inherent power to discipline an attorney includes the power to impose a monetary sanction.  Nevertheless, the defendants argue that such a sanction is reasonable and should be

15

available to trial courts since it would be a less severe sanction than the suspension of an attorney's license to practice in a particular court, which is indisputably within a court's authority.  See Norfolk & Portsmouth Bar Ass'n v. Drewry, 161 Va. 833, 838, 172 S.E. 282, 284 (1934).

Nearly two centuries ago, in Anderson v. Dunn, 19 U.S. 204 (1821), the Supreme Court of the United States stated, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."  Id. at 228.  These "inherent powers" are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  Link v. Wabash R. Co., 370 U.S. 626, 630–31 (1962).

Similarly, this Court has recognized that the courts of this Commonwealth have the inherent power to supervise the conduct of attorneys practicing before them and to discipline any attorney who engages in misconduct. Judicial Inquiry and Review Commission of Virginia v. Peatross, 269 Va. 428, 447, 611 S.E.2d 392, 402 (2005); Richmond Ass'n of Credit Men, Inc. v. The Bar Ass'n of

16

Richmond, 167 Va. 327, 335, 189 S.E. 153, 157 (1937);

Norfolk & Portsmouth Bar Ass'n, 161 Va. at 836, 172 S.E. at

283; Legal Club of Lynchburg v. Light, 137 Va. 249, 250,

119 S.E. 55, 55 (1923).  A court's inherent power to

discipline an attorney practicing before it includes the

power not only "to remove an attorney of record in a case,"

Peatross, 269 Va. at 447, 611 S.E.2d at 402, but also "in a

proper case to suspend or annul the license of an attorney

practicing in the particular court."  Legal Club of

Lynchburg, 137 Va. at 250, 119 S.E. at 55; accord Norfolk

and Portsmouth Bar Ass'n, 161 Va. at 836, 172 S.E. at 284.

The question before us is whether a court's inherent power

to discipline an attorney also includes the authority to

impose a monetary sanction comprised of an award of

attorneys' fees and costs to the opposing parties.[5]

As the defendants noted, we have not previously

addressed this precise question.  We did, however, in

Lannon v. Lee Conner Realty Corporation, 238 Va. 590, 385

S.E.2d 380 (1989), address a trial court's inherent power

to discipline a litigant by assessing attorney's fees

against her.  There, the trial court ordered a litigant to

pay $1,500 in attorney's fees to opposing counsel because

---

[5] The issue whether a trial court can impose a monetary sanction when using its contempt power is not before us.

17

of the litigant's " 'wanton and oppressive conduct' in requiring [opposing counsel] to attend 'a number of hearings for the sole purpose of replacing counsel at different stages of the case.' "  Id. at 593, 385 S.E.2d at 382.  Recognizing the absence of statutory authority for such an award, the trial court relied on its inherent power to require the losing party to pay attorney's fees when that party had " 'acted in bad faith, vexatiously, wantonly or for oppressive reasons.' "  Id. at 594, 385 S.E.2d at 383 (quoting In re Randolph, 28 B.R. 811, 813 (Bankr. E.D. Va. 1983)).[6]  We rejected the trial court's ruling that it had inherent power to award attorney's fees as a means of disciplining the offending litigant because, we concluded, the award was at odds with the "American rule" and our strong adherence to it.  Id. at 594, 385 S.E.2d at 383.  Under that rule, "ordinarily, attorneys' fees are not recoverable by a prevailing litigant in the absence of a specific contractual or statutory provision to the contrary."  Id. (citing Gilmore v. Basic Industries, 233 Va. 485, 490, 357 S.E.2d 514, 517 (1987)).

Although Lannon dealt with misconduct by a litigant as opposed to misconduct by an attorney, our decision there

---

[6] The trial court's assessment of attorney's fees in Lannon occurred before the effective date of Code § 8.01-271.1.

stands for the proposition that a court's inherent power to take disciplinary actions in response to misconduct is constrained by established legal principles. In the present case, the monetary sanction assessed against Nusbaum is not in accord with the purpose of a trial court's inherent power to discipline an attorney, which is "not to punish [the attorney], but to protect the public." Drewry, 161 Va. at 837, 172 S.E.2d at 284; accord Ex parte Wall, 107 U.S. 265, 288 (1883) ("The proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practise in them."); Statewide Grievance Committee v. Fountain, 743 A.2d 647, 650 (Conn. App. 2000) ("A court disciplining an attorney does so not to punish the attorney, but rather to safeguard the administration of justice and to protect the public from the misconduct or unfitness of those who are members of the legal profession.") The monetary sanction at issue served only to punish Nusbaum for his misconduct. This is so even though the circuit court awarded attorneys' fees only for the time expended by all the defendants with regard to the January 12 and March 21 hearings, both of which were necessitated by Nusbaum's misconduct.

In the absence of authority granted by a statute, such as Code § 8.01-271.1, or a rule of court, such as Rule 4:12, we conclude that a trial court's inherent power to supervise the conduct of attorneys practicing before it and to discipline an attorney who engages in misconduct does not include the power to impose as a sanction an award of attorneys' fees and costs to the opposing parties. We agree with the observations of the court in Bauguess v. Paine, 586 P.2d 942 (Cal. 1978): "It would be both unnecessary and unwise to permit trial courts to use fee awards as sanctions apart from those situations authorized by statute. If an attorney's conduct is disruptive of court processes or disrespectful of the court itself, there is ample power to punish the misconduct as contempt."[7] Id. at 948–49; but see Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) (Since a court has the inherent authority to dismiss a litigant's lawsuit with prejudice, the "'less severe sanction' of an assessment of attorney's fees is undoubtedly within a court's inherent power as well."); Couch v. Private Diagnostic Clinic, 554 S.E.2d 356, 362 (N.C. Ct. App. 2001) (holding that trial courts have

---

[7] After the court's decision in Bauguess, the California legislature statutorily broadened a trial court's authority to impose monetary sanctions, including attorney fees. See Olmstead v. Arthur J. Gallagher & Co., 86 P.3d 354, 356-57 (Cal. 2004).

20

inherent authority to impose an award of attorney's fees as a sanction); Van Eps v. Johnston, 553 A.2d 1089, 1091 (Vt. 1988) ("[T]rial courts have the inherent power to assess expenses against an attorney in the form of consequential damages suffered by the opposing side, such as attorney's fees . . . incurred due to the attorney's abuse of the judicial process.") Thus, we hold that the circuit court erred, as a matter of law, by concluding that it had the inherent power to impose the monetary sanction against Nusbaum as a means of disciplining him for his misconduct.[8]

### B. Criminal Contempt of Court

The circuit court convicted Nusbaum of contempt of court in violation of Code § 18.2-456(1). That provision permits a court or judge to issue "attachments for contempt, and punish them summarily" in cases involving "[m]isbehavior in the presence of the court, or so near

---

[8] We do not apply the abuse-of-discretion standard in reviewing the circuit court's decision here because the circuit court did not have the inherent power to impose the monetary sanction. That standard of appellate review is applicable when a court has the authority to impose a particular sanction and we are reviewing either the trial court's decision to sanction or its choice of the sanction to impose. See Switzer v. Switzer, 273 Va. ___, ___, ___ S.E.2d ___, ___ (this day decided).

In light of our decision, it is not necessary to address Nusbaum's other two assignments of error in his appeal from the circuit court's judgment imposing the monetary sanction.

thereto as to obstruct or interrupt the administration of justice."[9]  Nusbaum challenges his conviction on three grounds: (1) that the circuit court violated his "due process rights by summarily convicting him of indirect criminal contempt in a civil proceeding with no notice of the charge, no plenary criminal hearing and without substituting the Commonwealth as the prosecuting party;" (2) that the evidence was insufficient to support the conviction for contempt of court; and (3) that the circuit court erred by rejecting Nusbaum's affidavit and failing to dismiss the contempt charge based on his affidavit.

With regard to the first issue, the Commonwealth contends that Nusbaum did not properly preserve his due process objections.  The Commonwealth asserts that Nusbaum's general objection to the circuit court's determination and all its rulings, which his counsel noted after the court announced its finding of contempt at the January 12 hearing, was not sufficiently specific to preserve the due process issues now raised on appeal. Continuing, the Commonwealth also points out that, when Nusbaum's counsel later stated more specific objections

---

[9] Pursuant to Code § 18.2-457, "[n]o court shall, without a jury, for any such contempt as is mentioned in the first class embraced in § 18.2-456, impose a fine exceeding $250 or imprison more than ten days."

asserting a violation of his due process rights, he affirmatively stated he was not asking the circuit court to reconsider any matter. Thus, according to the Commonwealth, Nusbaum's failure to ask the circuit court to rule on his due process objections waived appellate review of them under Rule 5:25.

Nusbaum counters that he initially objected to all the circuit court's rulings and later made the circuit court aware of the substance of his due process objections by stating them at the March 21 hearing and noting them on the final order. Thus, according to Nusbaum, he did all that was required under the provisions of Code § 8.01-384(A) to preserve his objections for appeal. Nusbaum further contends that, having made the circuit court aware of his objections, he had no obligation to ask the court to reconsider any matter since the court had the opportunity, within 21 days of entering the final order, to vacate that order and change its rulings.

Under Rule 5:25, we will not sustain error to a ruling of a trial court "unless the objection was stated with reasonable certainty at the time of the ruling."

> The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals. In addition, a specific,

23

> contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding.

Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991) (internal citation omitted).  Furthermore, "[a] trial court [must have] an opportunity to rule intelligently on a party's objections," thereby "avoiding unnecessary mistrials or reversals".  Johnson v. Raviotta, 264 Va. 27, 33, 563 S.E.2d 727, 731 (2002); accord Riner v. Commonwealth, 268 Va. 296, 325, 601 S.E.2d 555, 571 (2004).  When a trial court is not afforded that opportunity, "the issue is waived on appeal."  Riner, 268 Va. at 325, 601 S.E.2d at 571.

In this case, the circuit court did not have the opportunity to rule on Nusbaum's due process objections for two reasons:  (1) at the January 12 hearing, the circuit court never made the rulings to which Nusbaum later objected; and (2) thereafter, Nusbaum never asked the circuit court to rule on his due process objections or reconsider any matter relating to the finding of contempt of court.  At the January 12 hearing after the circuit court convicted Nusbaum of contempt of court, his counsel stated: "[N]ote our objection to the determination of the [c]ourt . . . and to all of the rulings."  Other than the circuit court's ruling disqualifying Nusbaum, Laibstain,

24

and Nusbaum's entire law firm from continued representation of the plaintiffs, the only other rulings by the circuit court at that point were its finding that Nusbaum was guilty of contempt of court in violation of Code § 18.2-456(1) and its decision to impose a fine of $250.

Undoubtedly, everyone at the January 12 hearing was surprised when the circuit court, without prior notice to anyone, raised the issue of criminal contempt of court. However, at no point thereafter, either during the argument at that hearing or after the circuit court found Nusbaum guilty of contempt of court, did Nusbaum object to the court's proceeding summarily on what he now claims was a charge of indirect criminal contempt, without notice, without a plenary criminal hearing, and without substituting the Commonwealth as the prosecuting party. Nor did Nusbaum object to the fact the bailiff's statement was not offered under oath. Instead of objecting to the manner in which the circuit court had proceeded, Nusbaum's counsel stated that a separate hearing on the issue of a sanction would not be necessary if the court did not have a jail sentence in mind. Consequently, the circuit court made no ruling at the January 12 hearing on any of the due process issues now raised on appeal. They simply were not in front of the court at that time. Thus, the general

25

objection by Nusbaum's counsel to the circuit court's rulings did not pertain to those issues.

Following the January 12 hearing, Nusbaum filed a motion asking the circuit court to reconsider its decision to disqualify Laibstain and the entire law firm from further representation of the plaintiffs.  Nothing in that motion challenged Nusbaum's conviction for contempt of court or asserted a lack of due process afforded to him by the circuit court in making that finding.  Moreover, Nusbaum affirmatively stated in a memorandum in support of the motion that he was not asking the circuit court to reconsider any other aspect of its rulings, including its decision to disqualify Nusbaum, individually, from further representation of the plaintiffs.

Not until the March 21 hearing did Nusbaum state specific objections to the manner in which the circuit court had proceeded in finding Nusbaum guilty of contempt of court.  Nusbaum's objection at that time was that, because the circuit court had not directly observed the misconduct, Nusbaum was entitled to a trial, the denial of which violated his due process rights.  However, instead of asking the circuit court to reconsider and set aside the finding of contempt of court for those reasons, Nusbaum's counsel stated, "I am not asking [the court] at this time

26

to change [its] ruling.  I am simply going to make sure

. . . that I have preserved any right of appeal with

respect to the contempt finding."

Nusbaum took the same position at the March 27

hearing.  When a discussion arose about the objections

Nusbaum's counsel wanted to recite in the circuit court's

final order convicting Nusbaum of contempt of court,

Nusbaum's counsel again stated that he was not requesting

the court to reconsider its ruling.  Instead, Nusbaum's

counsel indicated he just wanted the order to reflect the

"particulars" of his objections to the contempt of court

conviction.  Both Nusbaum and his counsel noted the

"particulars" of the due process objections on the final

order, but again, there was no ruling by the circuit court

on those objections nor a request that it make one.  In

sum, this record contains no rulings by the circuit court

on the due process issues raised on appeal nor any request

by Nusbaum for the circuit court to rule on those issues.

We addressed an analogous situation in <u>Riner</u>, where we

held the defendant did not afford the trial court an

opportunity to rule intelligently on an issue subsequently

raised on appeal.  At trial, the defendant objected to a

witness's testimony on the grounds that it contained

"double hearsay."  268 Va. at 323, 601 S.E.2d at 570.  The

specific objection dealt with the second level of hearsay, but the trial court decided that the first level of hearsay was admissible and did not determine whether the second level of hearsay contained in the challenged testimony fell within a recognized exception to the hearsay rule.  Id. at 324, 601 S.E.2d at 571.

On appeal, the defendant asserted that the trial court erred in admitting the testimony because it contained double hearsay.  Id.  We agreed that the testimony contained double hearsay but concluded that the defendant waived the issue because he failed to remind the trial court, when it ruled that the testimony was admissible, that it had addressed only the first level of hearsay and had not determined whether the second level of hearsay was also admissible under a recognized exception to the hearsay rule.  We held that, "by failing to bring to the trial court's attention the fact that it had ruled only on the admissibility of the primary hearsay in the statement, [the defendant] did not afford the trial court the opportunity to rule intelligently on the issue."  Id. at 325, 601 S.E.2d at 571.  Thus, the defendant waived the issue on appeal.  Id.; see also Green v. Commonwealth, 266 Va. 81, 94-95, 580 S.E.2d 834, 842 (2003) (change of venue issue waived because a defendant did not renew the motion to

change venue before the jury was empanelled and sworn, or remind the trial court that the motion was still pending); Lenz v. Commonwealth, 261 Va. 451, 463, 544 S.E.2d 299, 306 (2001) (defendant's failure to request a ruling on a pretrial motion waived the issue on appeal); cf. Horner v. Dep't of Mental Health, 268 Va. 187, 194, 597 S.E.2d 202, 206 (2004) (failure to assign cross-error to an issue the Court of Appeals did not address waived further appellate review of the matter).

Here, Nusbaum's counsel did not just fail to remind the circuit court that it had not yet ruled on his due process objections; he actually stated, on more than one occasion, that he was not asking the court to reconsider any ruling. We can only infer from those statements that Nusbaum realized that his objection to the circuit court's rulings at the January 12 hearing was not stated "with reasonable certainty." Rule 5:25. Indeed, he admitted as much at the March 21 hearing when he told the circuit court he wanted to note specific objections to the contempt of court finding because he had stated only a general objection at the January 12 hearing. Similarly, he acknowledges on brief that he did not make the circuit court aware of the substance of his due process objections

29

until he stated them at the March 21 hearing and noted them on the final order.

Despite that apparent realization, Nusbaum still did not ask the circuit court to rule on his due process objections. In other words, Nusbaum never allowed the circuit court to rectify the effect of what he now asserts as error. See Johnson, 264 Va. at 33, 563 S.E.2d at 731 ("an objection must be made . . . at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error"). Thus, we conclude that Nusbaum did not afford the circuit court an opportunity to rule intelligently on the due process issues that he now raises. See Riner, 268 Va. at 325, 601 S.E.2d at 571. Those issues, whether the circuit court violated his due process rights by summarily convicting him of indirect criminal contempt, with no notice of the charge, no plenary criminal hearing, and no substitution of the Commonwealth as the prosecuting party, are therefore waived on appeal. See Rule 5:25; Riner, 268 Va. at 325, 601 S.E.2d at 571.

Furthermore, this is not a situation where the circuit court prevented Nusbaum from voicing his objections, asking the court to rule on them, or requesting the court to reconsider a ruling. See Code § 8.01-384 ("if a party has

no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him . . . on appeal"). At the March 21 hearing, the circuit court allowed Nusbaum to state on the record his objections to the contempt of court finding. At one point, the circuit court even stated that it wanted Nusbaum to do whatever he thought was necessary in order to preserve his appellate rights.

Of particular significance is the fact Nusbaum, after the January 12 hearing, filed a motion to reconsider but addressed only the circuit court's decision to disqualify Laibstain and Nusbaum's entire law firm from further representation of the plaintiffs. The circuit court ruled on that motion, as well as the defendants' motions asking the court to reconsider its decision denying an award of monetary sanctions. Yet, during all this time, Nusbaum never asked the circuit court to reconsider its contempt of court finding or to rule on the objections he raised at the March 21 hearing. While Nusbaum was perhaps surprised when the circuit court found him guilty of contempt of court, he subsequently stated his due process objections and had ample opportunities to ask the circuit court to rule on them. Compare Jones v. Commonwealth, 194 Va. 273, 280, 72 S.E.2d 693, 697 (1952) (when defense counsel was taken by

31

surprise and failed to object to the trial court's erroneous reply to a juror, the issue was not waived on appeal) with Weidman, 241 Va. at 44, 400 S.E.2d at 167 (counsel afforded trial court opportunity to rule intelligently by making position known at a hearing and by filing a motion for rehearing during the 21 days during which the trial court retained jurisdiction over the final order).

We turn now to the question whether there was sufficient evidence to support the circuit court's finding of contempt of court. When the sufficiency of the evidence is challenged on appeal, this Court is required to view the evidence in the light most favorable to the prevailing party at trial and to accord to that party the benefit of all reasonable inferences fairly deducible from the evidence. Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005). "[A] trial court's judgment will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1998) (citing Dukes v. Commonwealth, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984)).

Nusbaum's argument on this issue is two-pronged. He first asserts that the circuit court improperly relied on

the unsworn statement of the bailiff to find Nusbaum guilty of contempt of court. Though recognizing that the failure to administer the oath to a witness can be waived, Nusbaum claims that a waiver cannot occur when a defendant is not informed that certain testimony will be used in a criminal proceeding. He further argues that, when the circuit court heard the bailiff's statement, it was not in the context of a criminal proceeding, and thus, it is doubtful whether the court weighed the statement in light of the proper standard of proof beyond a reasonable doubt. Second, Nusbaum claims that, even if the circuit court could rely on the bailiff's unsworn statement, there was not sufficient evidence that he intentionally made physical contact with Allen.

With regard to Nusbaum's assertion that the circuit court improperly relied on the bailiff's unsworn statement, that issue, like his due process objections discussed earlier, is waived. In this instance, however, the waiver occurred because Nusbaum never raised the objection before the circuit court. As already discussed, the circuit court offered to place the bailiff under oath, but none of the parties requested that she be sworn. At no time thereafter did Nusbaum question whether the circuit court could rely on the bailiff's unsworn statement. We will not consider an issue raised for the first time on appeal. See Rule

33

5:25; <u>Martin v. Ziherl</u>, 269 Va. 35, 39, 607 S.E.2d 367, 368 (2005).

Thus, in determining whether the evidence was sufficient to support the conviction for contempt of court, we consider the bailiff's statement along with the other evidence, i.e., Nusbaum's and Allen's statements to the circuit court on the day the incident occurred and their respective affidavits.  The bailiff stated that she saw Nusbaum use his elbow to shove Allen.  In his affidavit, Nusbaum explained the incident as an inadvertent "bump" that "understandably [left the bailiff] with the impression that [Allen] had been shoved or pushed."  Allen stated that the bailiff's "recitation of the events that took place [was] consistent with [Allen's] own recollection."  Allen further stated that "Nusbaum's . . . 'bump' was neither inadvertent, nor was it unintended."  Allen explained that, when he "turned to resume questioning the witness[,] Nusbaum blocked [Allen's] path," forcing Allen to "step[] back twice."  Following the last step, according to Allen, "Nusbaum shoved his elbow against [Allen's] chest, forcing [Allen] against the podium."

As reflected by the evidence, the circuit court heard conflicting versions of the incident.  It was within the province of the court, as the fact-finder, to determine the

34

credibility of the witnesses.  See Mercer v. Commonwealth, 259 Va. 235, 242, 523 S.E.2d 213, 217 (2000).  "The factual determinations of the [circuit] court, like those of a jury, are binding on this Court, and we will reverse such findings 'only if they are plainly wrong or without evidence to support them.' "  Id. at 243, 523 S.E.2d at 217 (quoting Richardson v. Richardson, 242 Va. 242, 246, 409 S.E.2d 148, 151 (1991)); Code § 8.01-680.  As an appellate court, we are not permitted to reweigh the evidence.  School Board of Campbell County v. Beasley, 238 Va. 44, 51, 380 S.E.2d 884, 888 (1989).  Based on the record before us, we cannot say that the circuit court's judgment finding Nusbaum guilty of contempt of court was plainly wrong or without evidence to support it.  The evidence established that Nusbaum engaged in "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice."  Code § 18.2-456(1).

Finally, Nusbaum argues that the circuit court erred by not considering his affidavit.  We find nothing in the record to demonstrate that the underlying factual assertion is correct.  At the beginning of the January 12 hearing, the circuit court stated that it was "astounded and troubled that Mr. Nusbaum would execute and tender as an exhibit to his submission his affidavit seeking for the

first time to challenge [the bailiff's] testimony." As this statement reveals, the circuit court did not fail or refuse to consider Nusbaum's affidavit; the court merely found Nusbaum's account of the incident not believable.

CONCLUSION

For the reasons stated, we will reverse the circuit court's judgment imposing the monetary sanction against Nusbaum and vacate that sanction. We will affirm the circuit court's judgment convicting Nusbaum of contempt of court and imposing a fine of $250.

> Record No. 061277 – <u>Reversed and final judgment</u>.
> Record No. 061784 – <u>Affirmed</u>.