# CIRCUIT COURT OF THE CITY OF ROANOKE

Natasha B. Obrist

v.

Ronney Lee Lantz

March 12, 2007

Case No. CL06000426-00

BY JUDGE CHARLES N. DORSEY

Regarding the motion for continuance earlier made and granted, there remains the issue of sanctions. In that regard, in addition to the hearing on January 26 of this year, I have also reviewed Mr. Brown's statement of expended time, which I had requested, along with Liberty Mutual Insurance Company's pleading styled "Opposition to Sanctions."

*Factual Background*

Alleging that she had been negligently injured, the plaintiff filed her complaint on March 6, 2006. Pursuant to Virginia Code § 38.2-2206, she also served Liberty Mutual Insurance Company ("Liberty Mutual") as an underinsured motorist coverage carrier ("UIM"), which service was made on the registered agent on March 15, 2006. Bristol West Insurance Company, represented by Mr. Frankl, was also served in the same capacity but is not otherwise involved in the present issue. Liberty Mutual filed its answer to the complaint on April 5, 2006 stating, in its first numbered paragraph, that "Liberty Mutual files this pleading in its own name pursuant to Virginia Code

§ 38.2-2206(F)." Thereafter, Liberty Mutual fully participated and engaged in discovery and continued to submit pleadings in the name of Liberty Mutual Insurance Company.

Despite all of such action, upon review of Liberty Mutual's discovery responses shortly prior to trial, plaintiff's counsel noticed that the declaration page of the policy included the name of a Liberty Mutual subsidiary company, The First Liberty Insurance Corporation, which appeared to be the true underinsured carrier and real party in interest. Counsel for both the plaintiff and for Liberty Mutual were unaware of the identity of this proper party until three business days prior to trial.

Both counsel, promptly and professionally, first undertook to see if Liberty Mutual would provide coverage for its subsidiary so the trial could proceed as scheduled. There was not, however, sufficient time prior to trial for Liberty Mutual to obtain the appropriate corporate authority to take that action. Plaintiff's counsel then requested a continuance. Counsel for Liberty Mutual "informed plaintiff's counsel that Liberty Mutual would not agree to the continuance. . . ." Liberty Mutual's Opp'n to Sanctions, at 2. The hearing on the plaintiff's motion for a continuance resulted.

At the hearing, which both counsel assisted in expediting and which was conducted in chambers,[1] plaintiff's counsel made clear that Liberty Mutual's counsel had behaved entirely professionally, courteously, and with an eye towards resolving the issue between the parties without the need of judicial intervention. Similarly, counsel for Liberty Mutual, as stated in the opposition to sanctions, made clear that all the lawyers were innocently mistaken in believing that Liberty Mutual was the proper UIM carrier; that neither Liberty Mutual nor he, as its counsel, was playing "hide the ball;" and that Liberty Mutual had participated in the case in good faith believing that it was the proper UIM carrier. There is no dispute as to those facts and the Court consequently finds that this was an innocent and mutual misunderstanding between counsel and the parties. The issue then becomes what appropriate action should have been taken.

In that regard, at the time of the hearing on the plaintiff's motion for a continuance, the essential facts were agreed. When the Court inquired of counsel for Liberty Mutual as to the basis for his objection to a continuance, Liberty Mutual's counsel, as an officer of the court, stated, among other

---

[1] Mr. Brown and Mr. Barnard appeared at the hearing; Mr. Counts participated by telephone; and Mr. Frankl waived appearance. Mr. Counts, counsel for the defendant, had no objection to a continuance.

things, that he had advised his client to consent to any excess judgment even though it had not issued the policy. As noted, there was insufficient time for Liberty Mutual to obtain that authority prior to trial. Plaintiff's counsel agrees with that conclusion, and the Court finds that such resolution was not a viable alternative. Liberty Mutual's counsel then stated that he had advised his contact at Liberty Mutual that he anticipated that plaintiff's counsel would seek a continuance and that one would probably be granted by the Court. The adjuster at Liberty Mutual responded with words to the effect that Liberty Mutual would not agree to a continuance and the plaintiff would just have to "burn" her nonsuit. Counsel for Liberty Mutual made clear that, while he professionally believed that there was no basis to object to the continuance, he also believed he had no authority from Liberty Mutual to do otherwise.

*Analysis*

In *Nusbaum v. Berlin*, handed down by our Supreme Court last Friday, *Lannon v. Lee Conner Realty Corp.*, 238 Va. 590, 385 S.E.2d 380 (1989), was cited in support of the proposition that a trial court does not have the inherent power to discipline a litigant by assessing attorney's fees against her. *Nusbaum*, 273 Va. 385, 641 S.E.2d 494 (2007). The Supreme Court noted that the assessment of attorney's fees in *Lannon* occurred before the effective date of Virginia Code § 8.01-271.1.

Virginia Code § 8.01-271.1 "provides authority for a Court to order sanctions, including reasonable attorney's fees, against parties and attorneys who file pleadings or make motions `for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation'." *Lannon*, 238 Va. at 594.

Both *Lannon* and *Nusbaum* make clear that the Court has no inherent power to assess attorney's fees against a party litigant or against counsel. Virginia Code § 8.01-271.1, however, provides a basis for sanctions even when, as here, oral motions are used for improper purposes.

It is essential to distinguish between the role of counsel in this matter and the role of the party litigant. Counsel on both sides of this dispute, as well as their law firms, enjoy a deserved reputation for professionalism, courtesy, and competence. In this particular instance, counsel for the plaintiff made a reasonable request for continuance due to the fact that all lawyers and litigants innocently misunderstood who the underinsured carrier was. It is axiomatic that a motion for a continuance is "addressed to the sound discretion of the trial judge who must consider all the circumstances of the case." *Autry v. Bryan*, 224 Va. 451, 297 S.E.2d 690 (1982). Given the

factual circumstances and unintended confusion in this case, it was clear that failure to grant a continuance would constitute an abuse of discretion. Counsel for the defendant was properly mindful that he "should accede to reasonable requests regarding . . . continuances. . . ." *See* Comment 8 to Va. Sup. Ct. R., pt. 6, § II, R. 3.4. *See also,* Article II(a) of the Principles of Professional Courtesy of the Board of Governors of the Litigation Section of the Virginia State Bar.

Despite Liberty Mutual's counsel's effort and intent to comply with these aspirational standards of professionalism,[2] he was also bound by the mandate of Rule of Professional Conduct 1.2(a) that "a lawyer shall abide by the client's decisions concerning the objectives of representation. . . ." Va. Sup. Ct. R., pt. 6, § II, Preamble ("The text of each Rule. . . [is] authoritative. . . ."). Counsel appropriately weighed his aspirational duty against his mandatory duty and, having properly advised his client to the contrary, attempted to carry out his client's decision despite the fact that it conflicted with his advice and his intended action. Va. Sup. Ct. R., pt. 6, § II, Preamble ("In the nature of law practice . . . conflicting responsibilities are encountered. . . . Such issues must be resolved through the exercise of sensitive professional . . . judgment. . . ."); *see also In re Snyder,* 472 U.S. 634, 644, 105 S. Ct. 2874, 86 L. Ed. 2d 504 (1985) ("[T]his reflects the burdens inherent in the attorney's dual obligations to clients and to the system of justice."). Though it may be argued that his decision was not the only alternative available, it was solely his client's unreasonable insistence on objecting to the continuance and attempting to force the plaintiff to "burn" her nonsuit that created this unfortunate situation. Liberty Mutual's counsel continues to argue in the written motion in opposition to sanctions that, somehow, this situation was his fault rather than his client's. There is no factual basis set out in that motion to support such a finding, nor am I otherwise aware of any such factual basis, and I decline to so find. Litigants too are responsible for the consequences of their actions, especially when those actions result from the improper disregard of advice of counsel, clearly cause a needless increase in the cost of litigation and clearly seem motivated by a desire to harass rather than a legitimate justiciable controversy. *See In re Snyder,* 472 U.S. at 647 ("All persons involved in the judicial process – judges, *litigants,* witnesses, and court officers – owe a duty of courtesy to all other participants.") (emphasis added). To paraphrase the *Benitez* Court, putting the opposing party to the burden of

---

[2] Va. Sup. Ct. R., pt. 6, § II, Preamble, Terminology, (" `Should' when used in reference to a lawyer's action denotes an aspirational . . . standard.").

preparing a motion, setting a hearing, and arguing for a continuance when there was no reasonable basis to oppose it, "is oppressive." *Ford Motor Co. v. Benitez*, 273 Va. 242, 639 S.E.2d 203 (2007).

## Conclusion

In setting the amount of sanctions, which the Court is mandated to do pursuant to the statute, counsel for Liberty Mutual is correct that plaintiff's counsel should not be reimbursed for actions occurring after the hearing on the continuance and I do not do so. A sanction of $1,000.00 is imposed against Liberty Mutual to be paid to counsel for the plaintiff within thirty days.