PRESENT: All the Justices

ENVIRONMENT SPECIALIST, INCORPORATED,
T/A HOWELL'S HEATING AND AIR CONDITIONING CO.

OPINION BY
v. Record No. 150693          CHIEF JUSTICE DONALD W. LEMONS
                                        FEBRUARY 12, 2016

WELLS FARGO BANK NORTHWEST, N.A., AS
TRUSTEE OF THE GSA FREDERICKSBURG FBI
2013 PASS-THROUGH TRUST

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Michael E. Levy, Judge

In this appeal, we consider whether the trial court erred when it awarded $1200 in sanctions against plaintiff's counsel for counsel's failure to voluntarily extend the time in which a defendant might file its answer.

## I.   Facts and Proceedings

Environment Specialist, Inc., t/a Howell's Heating & Air Conditioning Co. ("ESI") filed a complaint in the Circuit Court of Stafford County ("trial court") against Stafford Office One, LLC, Stafford Office Two, LLC, Stafford Management I, LLC (collectively the "Stafford defendants"), Lawyers Title Realty Services, Inc., and Wells Fargo Bank Northwest, N.A., Trustee ("Wells Fargo"), in order to enforce a mechanics lien. According to the complaint, ESI had contracted with the Stafford defendants, the owners of the property in question, to perform certain HVAC improvements. At the time the complaint was filed, ESI asserted that there was an unpaid balance of $24,449.30 that it was owed. Wells Fargo was named in the complaint because it was the trustee and secured party under the "Credit Line Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing Statement" dated March 25, 2013, related to the property in question.

ESI's complaint was filed with the trial court on October 21, 2013. On October 29, 2013, the complaint was forwarded via the Secretary of the Commonwealth to Wells Fargo, and the Secretary filed a certificate of compliance with the clerk of the trial court on October 30, 2013. See Code § 8.01-329. Counsel for Wells Fargo, however, did not learn of the filing of the complaint until November 21, 2013. Counsel for Wells Fargo contacted counsel for ESI and requested a brief extension of the deadline within which to file its answer. Counsel for ESI did not consent to the requested extension. Wells Fargo then filed a motion for leave to file answer out of time, asking for leave to file the answer on or before November 26, 2013, and requested its "fees and costs incurred with regard to the motion." Wells Fargo did not cite any authority for the court's award of "fees and costs."

On January 2, 2014, the trial court entered a consent order between ESI and the Stafford defendants. The Stafford defendants agreed that they owed ESI the amount specified in the complaint, and agreed that the mechanics lien was a valid and enforceable lien against the property. Judgment was therefore entered jointly and severally against the Stafford defendants. Despite the entry of the consent order, on January 6, 2014, ESI filed a motion for default judgment against all the defendants, because none of the defendants had filed a responsive pleading within the 21-day period afforded by Rule 3:8.

The trial court held a hearing on February 3, 2014, to consider Wells Fargo's motion for leave to file answer out of time and ESI's motion for default judgment. The trial court granted Wells Fargo's motion and ordered ESI's counsel to reimburse Wells Fargo's counsel $1200 for "fees and costs" incurred regarding the motion for leave to file answer out of time. In that order, the trial court required that the payment be made within 30 days, which was subsequently done

"under protest." By separate order, the trial court granted ESI's motion for default judgment against defendant Lawyers Title Realty.

Thereafter, Wells Fargo, the only remaining defendant, and ESI advised the court that the matter had been settled. In its final order, entered February 18, 2014, the trial court stated that the judgment entered on January 2, 2014, had been satisfied and therefore released the mechanics lien. The trial court also stated that it had issued the $1200 sanctions award against ESI's counsel "for its failure to voluntarily extend the time in which Wells Fargo might file its answer." In its order, the trial court recites no statute or rule authorizing its award, nor does it invoke its inherent authority to do so.

There was no transcript of any proceeding related to the award of "fees and costs." Counsel for ESI submitted a written statement in lieu of a transcript pursuant to Rule 5:11(e) and counsel for Wells Fargo filed an objection thereto. However, the trial judge did not sign the statement in lieu of transcript and neither counsel placed the matter on the court's docket to accomplish this purpose.

ESI appealed to this Court and we granted the appeal on the following assignment of error:

1. The trial court erred in the following respect: By awarding sanctions against Counsel for the Plaintiff/Appellant for his failure to voluntarily agree to extend the time in which Counsel for the Defendant/Appellee was to file its Answer, as required by Rule 3:8(a) of the Rules of the Supreme Court of Virginia.

## II. Analysis

In Nusbaum v. Berlin, 273 Va. 385, 641 S.E.2d 494 (2007), we examined the trial court's inherent powers to discipline attorneys, and considered whether that power included the authority to issue monetary sanctions in response to attorney misconduct. We recognized that the courts of this Commonwealth have long had the inherent power to supervise the conduct of

3

attorneys practicing before them and to discipline any attorney who engages in misconduct.  Id. at 399, 641 S.E.2d at 501 (citing Judicial Inquiry & Review Comm'n of Va. v. Peatross, 269 Va. 428, 447, 611 S.E.2d 392, 402 (2005); Richmond Ass'n of Credit Men, Inc. v. Bar Ass'n of Richmond, 167 Va. 327, 335, 189 S.E. 153, 157 (1937); Norfolk & Portsmouth Bar Ass'n v. Drewry, 161 Va. 833, 836, 172 S.E. 282, 283 (1937); Legal Club of Lynchburg v. Light, 137 Va. 249, 250, 119 S.E. 55, 55 (1923)).  A court's inherent power to discipline an attorney practicing before it includes the power not only "to remove an attorney of record in a case," Peatross, 269 Va. at 447, 611 S.E.2d at 402, but also "in a proper case to suspend or annul the license of an attorney practicing in the particular court." Legal Club of Lynchburg, 137 Va. at 250, 119 S.E. at 55; accord Norfolk & Portsmouth Bar Ass'n, 161 Va. at 836-37, 172 S.E. at 283-84.

In Nusbaum, we determined that a monetary sanction against an attorney was not "in accord with the purpose of a trial court's inherent power to discipline an attorney, which is 'not to punish [the attorney], but to protect the public.'" 273 Va. at 400, 641 S.E.2d at 502 (citation omitted).  Accordingly, we concluded that, absent the authority granted by a statute or rule, "a trial court's inherent power to supervise the conduct of attorneys practicing before it and to discipline an attorney who engages in misconduct does not include the power to impose as a sanction an award of attorneys' fees and costs to the opposing party.  Id. at 400-01, 641 S.E.2d at 502.

Our holding in Nusbaum therefore makes it clear that a trial court may only impose a monetary sanction against an attorney if the authority to do so is granted to the trial court by a statute or rule.  As we stated above, the trial court in this case did not identify the authority under which it was imposing the monetary sanction against counsel.  Upon review we can find no Rule

4

of Court that applies, and, as outlined above, the trial court does not have inherent authority to justify its actions.

Although nothing in the record on appeal reveals that counsel or the trial court relied upon Code § 8.01-271.1 as a basis for its ruling, nonetheless we will consider whether the "sanctions" or "award of fees and costs" are justified pursuant to the statute. We have held that "a court's imposition of a sanction will not be reversed on appeal unless the court abused its discretion in 1) its decision to sanction the litigant, or 2) in the court's choice of the particular sanction employed." Switzer v. Switzer, 273 Va. 326, 331, 641 S.E.2d 80, 83 (2007).

We note that the trial court's order recites that the "sanction" was awarded because counsel for ESI failed to "voluntarily extend the time in which Wells Fargo might file its answer." The action by counsel declining to agree to an extension of time does not involve a "pleading, motion, or other paper" filed by counsel for ESI. In this regard, the award of sanctions is patently incorrect and completely without basis under the governing provisions of Code § 8.01-271.1, which provides in pertinent part:

> The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Nonetheless, and in plain disregard of the stated reason for the trial court's award, Wells Fargo argues for the first time on appeal that the trial court did not abuse its discretion in awarding sanctions because ESI filed its motion for default judgment against Wells Fargo with an improper purpose, and therefore the trial court had authority to issue sanctions under that portion of Code § 8.01-271.1. Wells Fargo is correct that an attorney may be sanctioned for

5

filing a motion that is well grounded in fact and warranted by existing law if that motion is nonetheless filed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. We recently affirmed a trial court's decision to issue sanctions on that exact basis. See Kambis v. Considine, 290 Va. 460, 468-69 & n.3, 778 S.E.2d 117, 121-22 & n.3 (2015) (affirming trial court's decision to award sanctions against plaintiff and plaintiff's counsel for filing numerous pleadings with an improper purpose of intimidating and injuring the defendant). However, there is nothing in the trial court's orders indicating that it ever made a finding that ESI's counsel had filed the motion for default judgment with an improper purpose. Rather, the trial court specifically held, in its final order, that it had imposed sanctions for counsel's "failure to voluntarily extend the time in which Wells Fargo might file its answer." It is well established law in this Commonwealth that a trial court speaks only through its written orders. Davis v. Mullins, 251 Va. 141, 148, 466 S.E.2d 90, 94 (1996). There is nothing in Code § 8.01-271.1 that gives a trial court authority to impose sanctions on an attorney for failing to voluntarily agree to an extension of a deadline for an opposing party.

On brief and in oral argument before this Court, counsel for Wells Fargo characterized ESI's counsel's behavior as "unprofessional." She asserted that in her 24 years of practicing law she had never heard of an attorney refusing to extend the type of professional courtesy she had requested. Counsel for Wells Fargo claimed that "the sanctions award was clearly intended to educate Plaintiff's counsel as to the level of professionalism [the trial judge] expected of counsel, as well as to reimburse Defendant's counsel for the unnecessary time and expense incurred in coming to [c]ourt to argue the [motion for leave to file an answer out of time]."

While professionalism embraces aspirational values of civility, courtesy, public service and excellent work product, legal ethics rules and statutory provision of sanctions express the

6

lowest level of permissible conduct at the Bar, below which an attorney may be subject to discipline or sanctions. The legal profession has been self-regulating, and its attempts to regulate the conduct of its members has created a tension between the aspirational goals of professionalism and the bare minimum of ethical requirements and conduct required by written rules and statutes.

In 1984, Chief Justice Warren Burger delivered a speech to the American Bar Association ("ABA"), voicing concerns over the decline in the public's perception of and confidence in lawyers. Warren E. Burger, The State of Justice, 70 A.B.A. J. 62 (1984). He asked the ABA to create a study group to examine these problems. Id. at 66. Chief Justice Burger's 1984 speech is generally considered the beginning of what many refer to as the Professionalism Movement: a concerted effort across the legal profession to address professionalism within its own ranks. See, e.g., Jack L. Sammons, The Professionalism Movement: The Problems Defined, 7 Notre Dame J.L. Ethics & Pub. Pol'y 269 (1993). In response to Chief Justice Burger's call for action, the ABA established the Commission on Professionalism. This Commission studied the challenges for continued professionalism in the modern practice of law, and recommended nearly thirty specific actions to be undertaken by all members of the legal profession. ABA Comm'n on Professionalism, In the Spirit of Public Service: A Blueprint for the Rekindling of Lawyer Professionalism, 112 F.R.D. 243, 300 (1986) (reporting the conclusions of the ABA commission on professionalism).

The second important development in the Professionalism Movement was the founding of the American Inns of Court, also upon the encouragement of Chief Justice Burger. The American Inns were founded to "promote the goals of legal excellence, civility, professionalism, and ethics on a national level." See American Inns of Court, About Us-History,

http://home.innsofcourt.org/AIC/About_Us/History/AIC/AIC_About_Us/History_of_the_Ameri can_Inns_of_Court.aspx (last visited Feb. 4, 2016). The first Inn was established in Utah in 1980, and a committee of the Judicial Conference of the United States recommended in 1983 the creation of a national foundation to support the expansion of the American Inn concept. Id. The American Inns of Court Foundation was created in 1985 to support the inns, and today there are nearly 400 chartered American Inns of Court, with more than 30,000 active members. Id.

In addition to the Inns of Court, fourteen states have established professionalism commissions as joint efforts between bar associations and the judiciary. See American Bar Ass'n, Professionalism Commissions, http://www.americanbar.org/groups/professional_responsibility/resources/professionalism/profco mmissions.html (last visited Feb. 8, 2016). Fourteen more state bar associations have professionalism committees. Id. Thirty-eight states plus the District of Columbia have codes or creeds for professionalism in legal practices. See American Bar Ass'n, Professionalism Codes, http://www.americanbar.org/groups/professional_responsibility/resources/professionalism/profes sionalism_codes.html (last visited Feb. 8, 2016).

Virginia lawyers have been active participants in the promotion of professionalism. A high level of professionalism has always been expected and encouraged of all attorneys in this Commonwealth. Before being admitted to the Bar of this Court, every attorney swears the following oath:

> Do you solemnly swear or affirm that you will support the Constitution of the United States and the Constitution of the Commonwealth of Virginia, and that you will faithfully, honestly, professionally, and courteously demean yourself in the practice of law and execute your office of attorney at law to the best of your ability, so help you God?

(Emphasis added). See also Code § 54.1-3903.

In 1987, this Court issued an order requiring all new attorneys in Virginia to take a mandatory course on professionalism, which is designed to encourage attorneys to uphold and elevate the standards of honor, integrity, and courtesy in the legal profession. See Virginia State Bar, About the Bar-Professionalism, https://www.vsb.org/site/about/professionalism (last visited Feb. 3, 2016). Additionally, in 2008, responding to the efforts of the Virginia Bar Association, this Court endorsed the Principles of Professionalism for Virginia Lawyers, which articulate standards of civility to which all Virginia lawyers should aspire. See Virginia State Bar, Principles of Professionalism, http://www.vsb.org/pro-guidelines/index.php/principles (last visited Feb. 3, 2016). These principles include guidelines on how counsel is expected to interact with clients, judges and court personnel, and opposing counsel. With respect to opposing counsel, attorneys should "[c]ooperate as much as possible on procedural and logistical matters," "[c]ooperate in scheduling discovery, negotiations, meetings, closings, hearings or other litigation or transactional events, accommodating opposing counsels' schedules whenever possible," and "agree whenever possible to opposing counsel's reasonable requests for extensions of time that are consistent with [an attorney's] primary duties to [the] client's interests." Id.

It is important to recognize, however, that the principles of professionalism are aspirational, and, as we stated when this Court approved their adoption, they "shall not serve as a basis for disciplinary action or for civil liability." Id. Moreover, the principles themselves recognize that conflicts may arise between an attorney's obligations to a client's best interests and the professional courtesy of agreeing to an opposing counsel's request for an extension of time. Id. In this case, it is clear that the trial court sanctioned plaintiff's counsel "for its failure to voluntarily extend the time in which Wells Fargo might file its answer." However, in this

case, counsel may not have been acting in his client's best interests if he had agreed to the requested extension of time. In fact, ESI directed counsel not to agree to the requested extension.

We applaud the bench and the bar as they encourage the aspirational values of professionalism. But there is a difference between behavior that appropriately honors an attorney's obligation to his client's best interest, behavior that falls short of aspirational standards, and behavior that is subject to discipline and/or sanctions. In this case, Wells Fargo was in default. Counsel for ESI satisfied his obligation to pursue his client's best interest, and in this case followed the client's express direction. Counsel did not engage in behavior that could be characterized as unprofessional, an ethics violation or behavior that is subject to statutory sanctions. Accordingly, we reverse the trial court's order awarding $1200 in sanctions against plaintiff's counsel for counsel's failure to voluntarily extend the time in which Wells Fargo could file its answer.

## III. Conclusion

For the reasons stated, we will reverse the judgment of the trial court regarding sanctions and remand for further proceedings not inconsistent with this opinion, including an order directing counsel for Wells Fargo to return the payment of $1200 to counsel for ESI.

<u>Reversed and remanded.</u>

10