740 S.E.2d 43

**Felecia AMOS**

v.

**COMMONWEALTH of Virginia.**

**Record No. 1667–11–4.**

Court of Appeals of Virginia,
Richmond.

April 9, 2013.

Felton, C.J., dissented, with opinion, in which Frank, Kelsey, Beales, and Huff, JJ., joined.

732

Justin M. Ellis (Steven F. Molo; Martin V. Totaro; Molo-Lamken, LLP, on briefs), for appellant.

Erin M. Kulpa, Assistant Attorney General (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.

Present: FELTON, C.J., ELDER, FRANK, HUMPHREYS, KELSEY, PETTY, BEALES, ALSTON, McCULLOUGH, HUFF and CHAFIN, JJ.

## UPON A REHEARING EN BANC

McCULLOUGH, Judge.

We consider in this case whether a litigant who was held in summary contempt is procedurally barred from raising certain arguments on appeal and, if not, whether the trial court erred in exercising its power of summary contempt. We conclude that Mrs. Amos's legal arguments are properly before us and that the finding of summary contempt must be reversed.

### FACTUAL BACKGROUND

Felecia Amos and her estranged husband, Antonio Jose Amos, shared custody of their son. Their relationship was hostile: he had been convicted of assaulting her and she had obtained a restraining order against him. Mr. Amos's sentencing order imposed a suspended sentence and required that he be of good behavior. On October 30, 2010, Mrs. Amos wrote a letter to the Commonwealth's Attorney for Arlington County, with a copy to the court, alleging that her estranged

husband had violated the restraining order. She stated that she was "writing this letter seeking HELP from your office as I am in fear of my life." (capitalization in original). She alleged, among other things, that during a custody exchange of their son at a McDonald's restaurant, Mr. Amos engaged in actions designed "to intimidate, harass and threaten" her.

Based on Mrs. Amos's allegations, the court issued a rule to show cause to determine whether Mr. Amos had violated the terms of his probation. Mrs. Amos appeared as a witness. She testified that, during the exchange on October 29, 2010, at the McDonald's, her husband crudely insulted her and that he made threats against her, telling her "you're going down." She stated that Mr. Amos began to leave the restaurant after picking up their son, but that he then walked back inside and used more profanity against her. She testified that she feared the situation was escalating, so she asked another customer to escort her to her car. She claimed that Mr. Amos followed her outside, yelling, "hey, buddy, what are [you] doing talking to my wife? She is a married woman," and that she noticed his car following hers after she drove out of the parking lot. Finally, she claimed that Mr. Amos followed her in his car after the incident at the McDonald's. She also testified about a separate occasion in which she felt Mr. Amos was harassing her.

Jason Salinas, a Sergeant in the United States Army, also testified at the hearing. Salinas explained that the First Army Commander had asked him to "help a soldier out" (Mr. Amos had achieved the rank of Colonel in the Army prior to his retirement) by observing the custody exchange of the Amoses' son. Salinas did not serve under Mr. Amos in the military and, in fact, had never seen him before. Salinas stated that he had no personal interest in the outcome of this case. On October 29, 2010, Salinas arrived at the McDonald's and took a seat where he would be well positioned to hear any conversation between Mr. and Mrs. Amos. He testified that, once Mrs. Amos arrived, there was no communication between her and Mr. Amos—they did not speak at all. Mrs. Amos dropped off the child and left. Mr. Amos stayed behind. Mr.

Amos also tape-recorded this exchange. The recording, which was played for the court, is consistent with Salinas's account and inconsistent with the testimony provided by Mrs. Amos. Finally, Mr. Amos denied the allegations Mrs. Amos made against him.

At the conclusion of the hearing, the court asked the prosecutor if she had anything else to add. The prosecutor stated that she was "speechless." In response, the court stated "[w]ell, there are going to be some other people speechless in a minute." The court then announced that it was dismissing the rule to show cause. The transcript reflects the following:

THE COURT: I'm not through. I am not through. The Court is not through.

When this first started, I said, well, it has been eight months without incident, so—it's not unusual in a divorce case to see some back and forth, but there has been nothing for eight months, and I just don't know what would be accomplished by punishing this man in keeping this flame burning.

But we have a different situation now.

There's no question that he has not violated this Court's orders. But what we do have is a [serious] situation that this Court does not take lightly.

Ms. Amos, come up here. Come up here by the podium, Ms. Amos. Yes, ma'am. Come on up here. I want to make sure we're on the same page.

Stand in front of that podium.

You have come into this court and made some serious accusations, and you have flat-out lied under oath. And it's very offensive to this Court, to every person in the legal community what you're doing. You're nothing but a vindictive woman towards this man.

I can understand your dislike for whatever reason. But you will not, as far as this Court is concerned, use this process to further that vindictiveness.

The Code of Virginia, under 18.2–456 provides that courts and judges may issue attempts [sic] for contempt and

punish them summarily, only in the following cases—and there are several, but I want to share one with you.

"Misbehavior in the presence of the court or so near thereto as to obstruct or interrupt the administration of justice."

I can't think of any more interruption of justice than what you have done deliberately in this courtroom.

And the Court finds you in contempt of court. You're sentenced to jail for ten days.

Remand her into custody, Sheriff.

THE COURT: Call the next case.

(Whereupon, the proceedings at 11:00 a.m. were concluded).

Mrs. Amos did not object at the time to being held in summary contempt. The court entered an order the same day memorializing the finding of contempt, remanding her to the custody of the sheriff and ordering a bail bond in the amount of $10,000.[1]

Seventeen days after the hearing, on June 27, 2011, Mrs. Amos filed a "motion to vacate sentence and object to this honorable courts [sic] finding." In her motion, she cited relevant case law, including *Scialdone v. Commonwealth*, 279 Va. 422, 442, 689 S.E.2d 716, 727 (2010), and argued that holding her in summary contempt violated her due process rights. The trial court never ruled on the motion. She also filed a notice of appeal on June 27, 2011.

## I. MRS. AMOS'S ARGUMENTS ARE NOT PROCEDURALLY DEFAULTED.

The threshold question we must address is whether the arguments Mrs. Amos makes on appeal are procedurally defaulted under Rule 5A:18. We conclude, on the specific facts before us, that Mrs. Amos lacked the opportunity to object to the summary contempt finding at the time it was made. Therefore, by operation of Code § 8.01–384(A), the absence of an objection does not prejudice her on appeal.

---

1. According to her pleadings, Mrs. Amos was released after seven hours of confinement.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Code § 8.01–384(A) operates in conjunction with this rule. This statute provides, in relevant part, that "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him . . . on appeal." The rule and the statute are complementary: Rule 5A:18 *presupposes* an opportunity to object "at the time of the ruling or order" and Code § 8.01–384(A) expressly provides that where the party does not have the opportunity to object to the ruling or order at the time it is made, the absence of an objection shall not prejudice her on appeal.

We note at the outset that Mrs. Amos did not have an opportunity to object at the time of the ruling or order. Mrs. Amos, who had appeared as a witness rather than as a party, was called to the bench. After the court castigated Mrs. Amos for her lies and for her vindictiveness toward her husband, the court ordered the sheriff's deputy to remove Mrs. Amos from the courtroom and directed the clerk to call the next case. On review of this record, it is plain that Mrs. Amos did not have the "opportunity to object to [the] ruling or order . . . at the time it [was] made." [2]

The Commonwealth responds that even if Mrs. Amos lacked an opportunity to object at the time the court held her in

---

**2.** When exercising its power to hold a witness or a litigant in direct contempt, a court ordinarily will afford the contemnor the opportunity to speak. *See Taylor v. Hayes*, 418 U.S. 488, 498, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974) ("[W]here summary punishment for contempt is imposed during trial, 'the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.'" (citation omitted)). *See also* Benchbook Comm., Virginia Criminal Benchbook for Judges and Lawyers § 14.08[1][c] (2012–13) (checklist for direct contempt includes an opportunity to "[p]ermit contemnor (and contemnor's attorney, if present) to speak"); Bench-book Comm., Virginia Civil Benchbook for Judges and Lawyers § 10.06[4][c][iii] (2012–13) ("Even in summary proceedings, the con-

contempt, she in fact had the opportunity to object to the ruling of the court by filing, as she did, a motion to vacate which asked the court to reconsider. The Commonwealth further posits that Mrs. Amos's motion was unavailing because, following *Brandon v. Cox,* —— Va. ——, ——, 736 S.E.2d 695, 697 (2012), a litigant must not only file a motion to reconsider with the clerk of court, but also must take steps to ensure that the court is "made aware of the argument[s]" in the motion to reconsider. *Id.* We find the Commonwealth's arguments unpersuasive for two interrelated reasons.

First, Code § 8.01-384(A) provides that if a party "[had] no opportunity to object to a ruling or order at the time it [was] made, the absence of an objection shall not thereafter prejudice him . . . on appeal."

> When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

*Conyers v. Martial Arts World of Richmond, Inc.,* 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (citations omitted). We have no occasion here to spell out how Code § 8.01-384(A) might apply in other situations. Whatever other situations Code § 8.01-384(A) may cover, it plainly applies when a litigant has been *foreclosed from* making a timely objection "at the time the ruling or order was made." And it further plainly indicates that a party shall not be prejudiced on appeal from that lack of opportunity to object at the time the ruling or order was made. To hold that Mrs. Amos *is* prejudiced on appeal when she did not have the opportunity to object would require

temnor should be given the right to explain his or her conduct or to produce reasons why he or she should not be punished or why his or her punishment should be mitigated."). The record reveals no such opportunity here.

us to ignore altogether the language in Code § 8.01–384(A) that Mrs. Amos "shall not" be prejudiced on appeal. We are not at liberty to do so.

Second, there are situations when a delayed objection does no good.[3] A principal purpose of the contemporaneous objection rule is to place the trial court "in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error." *Johnson v. Raviotta,* 264 Va. 27, 33, 563 S.E.2d 727, 731 (2002) (citation omitted). Requiring a party to file a motion to reconsider in order to preserve an issue might be perfectly sensible in some, perhaps even most, contexts. The same cannot be said, however, with regard to summary contempt. Summary contempt is "immediate[ly] punish[ed.]" *In re Oliver,* 333 U.S. 257, 274–75, 68 S.Ct. 499, 508–09, 92 L.Ed. 682 (1948). A contempt finding is effective upon oral pronouncement from the bench. *See Petrosinelli v. People for the Ethical Treatment of Animals, Inc.,* 273 Va. 700, 709, 643 S.E.2d 151, 156 (2007) (noting that a "court's contempt power encompasses written orders as well as 'oral orders, commands and directions of the court' " (quoting *Robertson v. Commonwealth,* 181 Va. 520, 537, 25 S.E.2d 352, 359 (1943))). Given the immediacy of summary contempt, it is crucial to afford the contemnor the opportunity to object immediately before or after the contempt is pronounced. That way, the trial court will be "in a position, not only to

---

3. For example, in a jury trial, objections to improper argument must be made before the case is submitted to the jury—an objection after that time comes too late. *Reid v. Baumgardner,* 217 Va. 769, 773, 232 S.E.2d 778, 781 (1977). Additionally, in ordinary circumstances, " 'an objection to the admissibility of evidence must be made when the evidence is presented. The objection comes too late if the objecting party remains silent during its presentation and brings the matter to the court's attention by a motion to strike made after the opposing party has rested.' " *Bitar v. Rahman,* 272 Va. 130, 139, 630 S.E.2d 319, 324 (2006) (quoting *Kondaurov v. Kerdasha,* 271 Va. 646, 655, 629 S.E.2d 181, 185 (2006)). The dissent, in footnote 10, agrees that Code § 8.01–384(A) would preserve appellate review in situations where a trial court has foreclosed an opportunity to contemporaneously make a proffer of evidence, to make objections to improper argument before a jury, and to make objections to the admissibility of evidence. In our view, the immediacy of summary contempt is analogous to these situations.

consider the asserted error, but also to rectify the effect of the asserted error." *Johnson,* 264 Va. at 33, 563 S.E.2d at 731.

We further note that *Brandon* did not involve a situation in which the trial court failed to afford the appellant an opportunity to contemporaneously object. Instead, the litigant in *Brandon* simply missed her first opportunity to object and then sought to make up lost ground by asking the court to reconsider. Therefore, the Court in *Brandon* had no occasion to construe the language from Code § 8.01–384(A) at issue here, namely, that an appellant shall not be prejudiced on appeal when that litigant "[had] no opportunity to object to a ruling or order at the time it [was] made." It is noteworthy that, in quoting from Code § 8.01–384(A) in *Brandon,* the Supreme Court specifically omitted the language above by inserting ellipses where this language appears. —— Va. at ——, 736 S.E.2d at 696. Nor was *Brandon* a summary contempt case. *Brandon* involved a landlord tenant dispute regarding the return of a security deposit. *Id.* at ——, 736 S.E.2d at 695. In short, *Brandon* does not supply the rule of decision here.

Certainly, a person who had no opportunity to object at the time a trial court found her in summary contempt may be able to and may choose to file a motion to reconsider. It may even be wise to do so. Such a step, however, is not required under Code § 8.01–384(A) in order to preserve an issue for appellate review.[4] Moreover, forcing a contemnor to seek reconsideration as the exclusive means of preserving a challenge to a finding of summary contempt places that person in a precarious position with regard to obtaining appellate review. For one thing, the contemnor may have served all or part of the

---

4. In *Nusbaum v. Berlin,* 273 Va. 385, 641 S.E.2d 494 (2007), a summary contempt case, the Supreme Court of Virginia held the due process argument defaulted on appeal. The litigant, who appeared as an attorney rather than as a witness, was not, like Mrs. Amos, foreclosed from offering an objection at the time the Court pronounced its judgment of summary contempt. As the Court expressly noted, it had no occasion to apply Code § 8.01–384(A) in that case. *Id.* at 406, 641 S.E.2d at 505. Moreover, the contemnor in *Nusbaum* received as his punishment a fine rather than immediate incarceration.

sentence for contempt prior to having the chance to ask for reconsideration and thus face little incentive to seek appellate relief. For another, the contemnor, like all litigants, has no right to present oral argument on a motion to reconsider. Instead, such arguments are presented at the discretion of the trial court. Rule 4:15(d). Although that rule governs civil cases, no case suggests a trial court has any less discretion in a criminal case. Such matters are commonly disposed of on the pleadings, without a hearing, in criminal and in civil cases. In addition, if the record does not show that the trial court has been made aware that a reconsideration motion has been filed, the mere filing of the motion will not be sufficient to preserve the arguments made for the first time in the reconsideration motion. *Brandon*, —— Va. at ——, 736 S.E.2d at 697. It will not always be clear, particularly to *pro se* litigants, how to make the trial court aware of the filing of the motion. Finally, if the court fails to rule on the motion to reconsider, for whatever reason, and the contemnor does not assign error to the failure to rule, the appellate court will hold that the issues on which the trial court failed to rule have been defaulted. *Kitchen v. City of Newport News*, 275 Va. 378, 387 n. 6, 657 S.E.2d 132, 137 n. 6 (2008).

■■ We therefore conclude that, in the summary contempt context, the phrase "at the time [the ruling or order was] made," found in Code § 8.01–384(A), means that the contemnor must be afforded the opportunity to object immediately before or after the contempt finding.[5] Furthermore, the fact that the trial court never ruled on her motion to reconsider or was not made aware of it does not foreclose appellate review of Mrs. Amos's arguments. This conclusion is driven by a plain language reading of Code § 8.01–384(A), that the absence of such an opportunity to object "shall not thereafter prejudice [a party] . . . on appeal." Concretely, this means that Mrs. Amos may raise arguments on appeal that she did not present at trial.

---

**5.** Our holding should not be interpreted as disturbing settled precedent regarding the rules of procedural default. As noted above, these rules serve important and salutary purposes.

## II. SUMMARY CONTEMPT WAS NOT APPROPRIATE.

We next consider whether the trial court erred in summarily holding Mrs. Amos in contempt. The answer is fairly straightforward. Indeed, the Commonwealth, which ably presents arguments on the question of procedural default, does not attempt to defend the correctness of the summary contempt finding.

 Although it is settled law that courts possess the power to summarily hold persons in contempt, *Ex parte Terry,* 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888), the exercise of the summary or direct contempt power " 'is a delicate one and care is needed to avoid arbitrary or oppressive conclusions.' " *Scialdone,* 279 Va. at 442, 689 S.E.2d at 727 (quoting *Cooke v. United States,* 267 U.S. 517, 539, 45 S.Ct. 390, 395–96, 69 L.Ed. 767 (1925)). Summary contempt is reserved for " ' "exceptional circumstances" ... such as acts threatening the judge or disrupting a hearing or obstructing court proceedings.' " *Vaughn v. City of Flint,* 752 F.2d 1160, 1167 (6th Cir.1985) (quoting *Harris v. United States,* 382 U.S. 162, 164, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965)).

 The court held Mrs. Amos in summary contempt at the conclusion of a hearing in which she testified as a witness against her estranged husband. The court based its finding on its conclusion that she had testified untruthfully and that she was vindictive toward her estranged husband. The United States Supreme Court in *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682, explained that

> [e]xcept for a narrowly limited category of contempts, due process of law ... requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.

*Id.* at 275, 68 S.Ct. at 508–09. The Court acknowledged the "narrow exception to these due process requirements" for summary contempt, but that exception is limited to

charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority" before the public.

*Id.* "If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires ... that the accused be accorded notice and a fair hearing as above set out." *Id.* at 275–76, 68 S.Ct. at 509.

 The truth or falsity of Mrs. Amos's testimony and whether she was a victim or a vindictive person "depend[ed] upon statements made by others." *Id.* at 275–78, 68 S.Ct. at 509. *See also Scialdone,* 279 Va. at 445–48, 689 S.E.2d at 729–30. Therefore, summary contempt was not available. Accordingly, we reverse the judgment of the trial court holding Mrs. Amos in summary contempt.[6]

## CONCLUSION

We reverse the trial court's judgment of summary contempt and enter final judgment for Mrs. Amos.

*Reversed and final judgment.*

FELTON, C.J., with whom FRANK, KELSEY, BEALES, and HUFF, JJ., join, dissenting.

---

**6.** The fact that Mrs. Amos impelled the Commonwealth to request the issuance of a show cause and sent a copy of the letter to the court does not change the answer. Summary contempt applies when the conduct in question occurs " 'in open court, in the presence of the judge ... where all of the essential elements of the misconduct [were] actually observed by the court.' " *Scialdone,* 279 Va. at 444, 689 S.E.2d at 728 (quoting *In re Oliver,* 333 U.S. at 275, 68 S.Ct. at 509). Mrs. Amos's drafting and mailing of a letter to the Commonwealth's Attorney, with a copy to the court, in which she detailed the allegations against her former husband, did not occur in the presence of the court.

I respectfully dissent. In my view, the record on appeal reflects that appellant failed to preserve her assignments of trial court error for appeal, as required by Rule 5A:18. Moreover, I conclude that the "ends of justice" and "good cause" exceptions to Rule 5A:18 are inapplicable to this appeal. I would affirm the order of the trial court finding appellant guilty of contempt.

## A.

The determination whether appellant is procedurally barred from raising her assertion of trial court error on appeal, and, if not, whether the trial court erred by finding her guilty of contempt, is a question of law that this Court reviews *de novo*. *Brown v. Commonwealth*, 279 Va. 210, 217, 688 S.E.2d 185, 189 (2010).

The record on appeal shows that, on June 10, 2011, appellant appeared before the trial court to testify as to why her ex-husband's probation should be revoked.[7] At the conclusion of the hearing, the trial court dismissed the show cause order against her ex-husband. It then directed appellant to the front of the courtroom. The trial court stated that it found overwhelming evidence that appellant "flat-out lied under oath." It stated that her behavior was "vindictive" and "very offensive to this Court [and] to every person in the legal community." It found that she had "use[d] [the criminal justice system] to further [her] vindictiveness." The trial court then found appellant guilty of contempt of court, sentenced her to jail for ten days, set her bail in the amount of $10,000, and ordered the sheriff's deputy to take her into custody. The trial court then proceeded to call the next case on its docket.

---

7. At the request of the Office of the Commonwealth's Attorney of Arlington County, the trial court issued the order for appellant's former husband to appear and show cause why his probation should not be revoked. The trial court issued its show cause order after the Commonwealth's attorney forwarded a copy of appellant's letter to the trial court, detailing her allegations of husband's egregious and threatening conduct and asserting he violated the conditions of his probation.

Appellant posted bail and was released from custody approximately seven hours after the trial court found her guilty of summary contempt. Seventeen days later, appellant filed a detailed motion for reconsideration of its finding her guilty of summary contempt, and a motion to vacate her conviction of contempt, in the trial court.[8] The trial court never ruled on appellant's motion, and there is no indication in the record that appellant sought a ruling of the court on her motion for reconsideration or her motion to vacate her contempt conviction.

Where a party fails to obtain a ruling on a matter presented to a trial court, there is nothing for this Court to review on appeal. *Fisher v. Commonwealth,* 16 Va.App. 447, 454, 431 S.E.2d 886, 890 (1993). *See also Taylor v. Commonwealth,* 208 Va. 316, 324, 157 S.E.2d 185, 191 (1967) (assignment of error waived on appeal where the trial court did not rule on defendant's objection, and defendant "did not insist that the court rule" on his objection); *Williams v. Commonwealth,* 57 Va.App. 341, 347, 702 S.E.2d 260, 262 (2010) (appellant waived his assignment of error on appeal because he did not obtain a ruling from the trial court on his pretrial motion to dismiss); *Duva v. Duva,* 55 Va.App. 286, 299, 685 S.E.2d 842, 849 (2009) ("Because the record does not show that the trial court ruled on appellant's argument, there is no ruling of the trial court for this Court to review on appeal."); *Schwartz v. Commonwealth,* 41 Va.App. 61, 71, 581 S.E.2d 891, 896 (2003) (because the trial court never ruled upon appellant's motion to set aside his convictions, there was no ruling for this Court to review on appeal); *Ohree v. Commonwealth,* 26 Va.App. 299, 308, 494 S.E.2d 484, 489 (1998) (where the trial court did not rule on appellant's objection, "there is no ruling for us to review on appeal"); *Hogan v. Commonwealth,* 5 Va.App. 36, 45, 360 S.E.2d 371, 376 (1987) (because appellant failed to obtain a ruling from the trial court on his argument that lineups were

---

**8.** Appellant asserted in her motion that the evidence was insufficient for the trial court to find her guilty of contempt, in violation of Code § 18.2–456(1), and that the trial court deprived appellant of her right to due process by finding her guilty of contempt in a summary proceeding.

improperly conducted and the evidence of identification was otherwise insufficient, this Court had no ruling of the trial court to review).

Because appellant failed to obtain a ruling from the trial court on her motion for reconsideration of its finding her guilty of contempt within the twenty-one-day period prescribed by Rule 1:1,[9] she has waived the trial court error she assigns on appeal.

### B.

Despite appellant's failure to obtain a ruling from the trial court on her motion to reconsider its finding her guilty of contempt, the majority concludes that:

> [T]he fact that the trial court never ruled on [appellant's] motion to reconsider or was not made aware of it does not foreclose appellate review of Mrs. Amos's arguments. This conclusion is driven by a plain language reading of Code § 8.01–384(A), that the absence of such an opportunity to object "shall not thereafter prejudice [a party] . . . on appeal." Concretely, this means that Mrs. Amos may raise arguments on appeal that she did not present at trial.

*Supra* at 741.

Code § 8.01–384(A) provides that if a party "[had] no opportunity to object to a ruling or order at the time it [was] made, the absence of an objection shall not thereafter prejudice him . . . on appeal."

> [T]he lack of an "opportunity to object" . . . relates to the reason why an objection was not made at the time of the ruling. Thus, the statutory exception [to the contemporaneous objection rule] is subsumed under the "good cause" exception [to Rule 5A:18] because both relate to the reason why an objection was not timely made.

---

**9.** Rule 1:1 provides, in pertinent part, that the trial court may modify, vacate, or suspend any final order of the trial court within "twenty-one days after the date of entry, and no longer."

*Campbell v. Commonwealth*, 14 Va.App. 988, 995–96, 421 S.E.2d 652, 656–57 (1992) (Barrow, J., concurring) (citations omitted).

In *Nusbaum v. Berlin*, 273 Va. 385, 641 S.E.2d 494 (2007), the Supreme Court considered whether the trial court violated Nusbaum's right to due process by summarily convicting him of indirect criminal contempt. The Court held that Nusbaum waived his due process argument on appeal because he did not afford the trial court the opportunity to rule on that assertion, as required by Rule 5:25. The Court concluded that the record on appeal did not present

> a situation where the circuit court prevented Nusbaum from voicing his objections, *asking the court to rule on them, or requesting the court to reconsider a ruling.* See Code § 8.01–384 ("if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him ... on appeal").
>
> * * * * * *
>
> While Nusbaum was perhaps surprised when the circuit court found him guilty of contempt of court, *he subsequently stated his due process objections* and *had ample opportunities to ask the circuit court to rule on them.*

*Id.* at 406, 641 S.E.2d at 505 (emphasis added). Despite the Supreme Court's acknowledgment that Nusbaum was "surprised" by the trial court's ruling, and its acknowledgment that his surprise excused his failure to object at the time the ruling was made, the Supreme Court found that he waived his arguments on appeal because he subsequently gained the opportunity to ask the trial court to rule on his objections, yet he failed to do so. *Cf. Jones v. Commonwealth*, 194 Va. 273, 280, 72 S.E.2d 693, 697 (1952) (Supreme Court reached the merits of defendants' appeal despite their failure to contemporaneously object to the trial court's ruling because defendants were "taken by surprise at the occurrence" and they *"assigned the action of the trial court as the basis for their motion to set aside the verdict"* (emphasis added)).

Stated differently, the saving provision of Code § 8.01–384(A) protects an appellant from waiving on appeal only those objections that could not be made at the time of the

ruling *and* that could not be cured by a post-conviction motion.[10] Clearly, the record shows that, even though she may have been taken aback by the trial court's ruling, not only did appellant have an opportunity to object by way of asking the trial court to reconsider its contempt finding, she actually filed a written motion asking the trial court to do so well within the twenty-one-day period prescribed by Rule 1:1. Although Code § 8.01–384(A) protects a party from prejudice on appeal in the event that she is prevented from asserting a contemporaneous objection in the trial court, an appellant still may be prejudiced by her failure to obtain a ruling from the trial court on a later filed objection. Many procedural default cases take into account that, with or without a good cause explanation for not making an earlier objection, the "defendants have offered no explanation for their [later] failure to bring their objections to the attention of the trial court before the judgment order became final." *Faizi–Bilal Int'l Corp. v. Burka,* 248 Va. 219, 223, 445 S.E.2d 125, 127 (1994).[11]

---

**10.** For example, an appellant's failure to proffer the evidence she expected to obtain from excluded testimony would normally foreclose an appellate court from determining whether the trial court committed reversible error by disallowing the testimony. *See, e.g., Ray v. Commonwealth,* 55 Va.App. 647, 649, 688 S.E.2d 879, 880 (2010) (" 'When an appellant claims a trial court abused its discretion in excluding evidence, we cannot competently determine error—much less reversible error—without a proper showing of what that testimony would have been.' " (quoting *Whittaker v. Commonwealth,* 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977))). If, however, the record showed that the trial court prohibited a defendant from making a proffer, the saving provision of Code § 8.01–384(A) would permit appellate review of whether the trial court committed reversible error by refusing to allow the defendant to introduce the expected evidence. *See, e.g., Edwards v. Commonwealth,* 19 Va.App. 568, 572–73, 454 S.E.2d 1, 3 (1995) ("[U]nder the particular facts of this case, appellant's failure to proffer does not preclude our consideration of this issue. . . . [T]here was no way appellant could have proffered what a potential cross-examination answer would have been until he laid the initial foundation," which the trial court erroneously refused to permit him to do.). In addition, Code § 8.01–384(A) would permit appellate review of objections to improper argument before a jury and objections to the admissibility of evidence, both of which ordinarily must be made contemporaneously or are forever waived, if the record showed that the trial court foreclosed a litigant from making the objection at the time the error occurred.

**11.** The same is true in workers' compensation cases. For example, a claimant may make two arguments in favor of an award of compensa-

"Simply put, a defendant may not rely upon Code § 8.01–384(A) to preserve for appeal an issue that he never allowed the trial court to rule upon." *Murillo–Rodriguez v. Commonwealth*, 279 Va. 64, 84, 688 S.E.2d 199, 210 (2010). Here, appellant had ample time to seek a ruling on her motion asking the trial court to reconsider its finding her in summary contempt, yet she failed to do so.[12] Even assuming, without deciding, that the trial court prevented appellant from making a contemporaneous objection to its finding her guilty of summary contempt, her failure to obtain a ruling from the trial court on her motion to reconsider that finding bars this Court's consideration of her argument on appeal.[13]

---

tion. The commission, in turn, may issue an opinion denying coverage on one of the two grounds but refusing to address the second ground. By issuing a final opinion without a hearing, the commission effectively precludes a contemporaneous objection to its error. The saving provision of Code § 8.01–384(A), like the "good cause" exception to Rule 5A:18, excuses the claimant for not objecting "at the time [the ruling] [was] made" because it was impossible for the claimant to do so. However, the appeal still fails if the claimant neglected to file an after-the-fact motion to reconsider. *See Williams v. Gloucester Sheriff's Dep't*, 266 Va. 409, 411, 587 S.E.2d 546, 548 (2003) ("Finally, the requirement that a litigant file a motion for rehearing or reconsideration to preserve an issue for appeal under these circumstances is not a new requirement. The Court of Appeals has consistently held that the failure to file such motions under these circumstances bars raising the issue on appeal."); *Hodnett v. Stanco Masonry, Inc.*, 58 Va.App. 244, 253, 708 S.E.2d 429, 434 (2011) (this Court refused to consider an issue on appeal because claimant did not file a motion to reconsider after the commission failed to address an issue he raised for review).

**12.** The majority cites Rule 4:15(d) in support of its assertion that "a litigant has no right to present oral argument on a motion to reconsider. Instead, such arguments are presented at the discretion of the trial court." Notably, Rule 4:15(d) is a rule of civil procedure that, on its face, relates only to "all civil case motions." There is no corollary rule for criminal case motions that prohibits oral argument on a motion for reconsideration except "at the request of the court." Rule 4:15(d); *see generally* Part 3A of the Rules of the Supreme Court of Virginia.

**13.** That appellant initially appeared before the trial court as a witness at the show cause hearing she initiated does not excuse her failure to

## C.

In my view, appellant failed to preserve her assignments of trial court error for appeal. However, appellant's request that this Court invoke the "good cause" or "ends of justice" exception to Rule 5A:18 to reverse her conviction must be considered.

The ends of justice exception "is narrow and is to be used sparingly." *Brown v. Commonwealth,* 8 Va.App. 126, 132, 380 S.E.2d 8, 11 (1989). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Redman v. Commonwealth,* 25 Va.App. 215, 221, 487 S.E.2d 269, 272 (1997) To establish that a clear miscarriage of justice has occurred, appellant must demonstrate that she was found guilty of conduct that did not constitute contempt, or the record must affirmatively prove that an element of the offense did not occur. *Id.* at 221–22, 487 S.E.2d at 273.

Appellant has not demonstrated that she was found guilty of conduct that was not contempt, and the record does not show that an element of contempt, a common law offense, did not occur. The Supreme Court has long held that perjury may be punished as contempt, so long as there is "added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty." *Ex parte Hudgings,* 249 U.S. 378, 383, 39 S.Ct. 337, 340, 63 L.Ed. 656 (1919). The trial court explicitly found that appellant lied under oath. It found that she obstructed the court in the administration of its duties by writing a falsified letter to the Commonwealth's Attorney that implored the trial court's assistance and invoked its jurisdiction. Accordingly, I

---

preserve her argument that the trial court erred by finding her guilty of contempt. *See, e.g., Townes v. Commonwealth,* 234 Va. 307, 319, 362 S.E.2d 650, 656 (1987) ("[T]he 'right of self-representation is not a license' to fail 'to comply with the relevant rules of procedural and substantive law.' " (quoting *Faretta v. California,* 422 U.S. 806, 834–35 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975))).

would decline to apply the ends of justice exception to reach the merits of appellant's assignment of error.[14]

Similarly, I find no basis to apply the good cause exception to Rule 5A:18. " 'Good cause' relates to the reason why an objection was not stated at the time of the ruling." *Campbell,* 14 Va.App. at 996, 421 S.E.2d at 656 (Barrow, J., concurring). When an accused has ample opportunity to bring a purported error to the trial court's attention but fails to do so, the good cause exception does not apply. *Andrews v. Commonwealth,* 37 Va.App. 479, 493–94, 559 S.E.2d 401, 409 (2002). Here, nothing prevented appellant from objecting after the trial court found her guilty of contempt. Even if the circumstances were such that she was taken aback by the trial court's ruling, she filed a post-conviction motion asking the trial court to reconsider its ruling within the twenty-one-day period prescribed by Rule 1:1. However, appellant deprived the trial court of its jurisdiction to consider her motion for reconsideration by filing a notice of appeal to this Court on the same day she filed her motion asking the trial court to reconsider its finding her guilty of contempt. *See McCoy v. McCoy,* 55 Va.App. 524, 528, 687 S.E.2d 82, 84 (2010) ("When a party files a notice of appeal, that notice 'effectively transfers jurisdiction from the lower court to the appellate court and places the named parties within the jurisdiction of the appellate court.' " (quoting *Watkins v. Fairfax County Dep't of Family Servs.,* 42 Va.App. 760, 771, 595 S.E.2d 19, 25 (2004))); *Walton v. Commonwealth,* 256 Va. 85, 95, 501 S.E.2d 134, 140 (1998) (once an appellate court acquires jurisdiction of a case, the jurisdiction of the trial court from which the appeal was taken ceases). Because appellant moved the trial court to reconsider its finding her guilty of contempt, but deprived the trial court of the opportunity to rule on her motion, the good cause exception to Rule 5A:18 does not apply.

---

**14.** Appellant asserts that the trial court erred by finding her guilty of contempt in a summary proceeding. However, whether the trial court erred by punishing her summarily is merely a question of procedure; it has no bearing on whether the substantive elements of the contemptible conduct, here perjury and obstruction of justice, occurred.

Accordingly, I find no basis to invoke either the "good cause" or "ends of justice" exception to Rule 5A:18 to reach the merits of appellant's argument on appeal.

### D.

Because appellant failed to preserve her assignments of trial court error for appeal, and because neither the "ends of justice" nor "good cause" exceptions to Rule 5A:18 are applicable, I would affirm the judgment of the trial court finding appellant guilty of contempt.