COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, O'Brien and Fulton
Argued at Norfolk, Virginia


5800 HVB, LLC

MEMORANDUM OPINION[*] BY
v.        Record No. 0625-23-1         JUDGE JUNIUS P. FULTON, III
JUNE 25, 2024

HARBOUR VIEW COMMERCE ASSOCIATION, INC.


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
James C. Hawks, Judge Designate

L. Steven Emmert (Sykes, Bourdon, Ahern & Levy, P.C., on briefs),
for appellant.

W. Thomas Chappell (James R. Harvey; Dustin M. Paul; Woods
Rogers Vandeventer Black, PLC, on brief), for appellee.

Amicus Curiae: Community Associations Institute (Todd A.
Sinkins; Ruhi F. Mirza; Lauren K. Ierardi; Rees Broome, PC, on
brief), for appellee.[1]


5800 HVB, LLC ("HVB") purchased commercially zoned property in the Harbour View

Commerce Center in Suffolk and proposed to build a convenience store/gas station.  After its plans

to develop the property were rejected, HVB sued the Harbour View Commerce Association, Inc.

("Harbour View"), seeking a declaratory judgment that the association's architectural review board

("the ARB") was not authorized to reject HVB's plans to develop its property.  HVB appeals the

final order of March 23, 2023, ruling in favor of Harbour View.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The Community Associations Institute moved for leave to file an amicus curiae brief in
this matter along with said brief in support of appellee.  This Court grants the motion.

I. BACKGROUND

The property at issue lies within a planned commercial development in Suffolk. The developer of this project recorded "The Declaration of Protective Covenants for Harbour View Commerce Center" ("the declaration"), providing for the creation of an "integrated commercial project . . . with a planned mix of office and commercial uses" in 1998. The declaration's stated purpose is to create a harmonious development, providing, in relevant part, that it is "designed to complement the Zoning Ordinance and other Laws, and where conflict occurs, the more restrictive requirement shall prevail." The declaration also permits the creation of an architectural review board and creates a framework whereby landowners are required to obtain Harbour View's approval—via the ARB—to move forward with a proposed use. Consistent with the declaration's provisions charging the ARB with the responsibility to regulate use to create a harmonious development, Section 5.1(b) gives the ARB the power to promulgate development guidelines. Relevant to this appeal, Section 3 of the Development Guidelines states:

> All of the building sites are to be used for offices, display rooms, general administration, lodging (but not residences), light manufacturing, assembling or producing, wholesaling, warehousing, and businesses of a kindred nature, including auxiliary facilities that are necessary or directly related to the uses enumerated above, and for such other uses as the Declarant shall determine in its sole discretion to be in harmony with the general character and purposes of Harbour View Commerce Center. All uses must receive the prior written approval of Declarant, and shall not be contrary to the Declaration, these Design Guidelines or in violation of any laws of the United States, the statutes of Virginia, or applicable ordinances.

HVB bought a parcel in the Harbour View Commerce Center in 2018. Per the Unified Development Ordinance ("UDO") for the City of Suffolk, the parcel HVB purchased is zoned B-2, allowing certain commercial uses including gas stations and convenience stores. In October 2020, HVB applied to the ARB to construct a 7-Eleven gas station and convenience store and a

National Tire & Battery ("NTB") automobile tire and service station on its parcel.[2]  The ARB denied the application, finding that the plan "lack[ed] conformity and harmony of external design with neighboring [l]ots and types of operations and uses thereof," and failed to "conform to the overall plans for the [Harbour View] Project or the purpose and general plan and intent of the Declaration."  In support of its decision, the ARB cited to certain sections of the declaration and guidelines relating to the purpose and permitted uses of land in the Harbour View Commerce Center.

In February 2021, HVB filed suit in the Circuit Court of the City of Suffolk seeking a declaratory judgment that Harbour View's own declaration required Harbour View to approve any use that would be permitted in a B-2 district under the UDO as a matter of right.  HVB further claimed that the ARB exceeded its authority when it adopted Section 3 of the ARB's Development Guidelines and provided for the exclusion of uses that are B-2 permitted by right. Lastly, HVB asked the trial court to declare that the ARB's decision to deny the application was incorrect under the declaration and was arbitrary and capricious.

The case proceeded to a bench trial beginning on December 5, 2022.  At trial, Keith Horton, the president of Harbour View and the ARB chair at the time of the decision, testified that the ARB consisted of himself, and two others representing other Harbor View commercial property owners, and that each had significant property development experience.  Horton explained that the proposed use of the parcel as a convenience store/gas station was unprecedented in Harbor View.  He explained that the types of businesses in the community included a medical building, two schools, a pharmacy, a small gourmet sandwich restaurant, a dialysis center, a dentist, a periodontist, a podiatrist, a small dress store, and a daycare center that

_____

[2] HVB later withdrew its plans for the NTB and applied only to construct a 7-Eleven gas station.

would be "roughly 50 feet from where the exhaust from the tanks would be." Horton also testified that there are no gas stations, convenience stores, service stations, or tire stores in the Harbour View Commerce Center.

Horton further testified that even if the authority of the ARB to consider the proposed "use" was not allowed, the ARB's responsibility to carry out the purpose of the declaration to "assure the orderly and attractive development of the Property, to promote the health and safety of the Occupants and to maintain the harmonious relationship among the structures" informed its authority to consider the extent to which the proposed use "will constitute a nuisance or degrade the value of the Property." Consequently, there were other reasons that independently support the denial of the application, including the tightness of the site relative to gas tanker access.[3] He stated that the damage to a road maintained by Harbour View from gas tankers as well as excess trash generated by the presence of a convenience store would result in all members having to pay more in maintenance fees if HVB's application was approved.

The chief executive officer of the childcare center adjacent to the parcel of land purchased by HVB, Wayne Bell, also testified. He expressed health and safety concerns with having a childcare center adjacent to a gas station, stating that the center has been in that location since 2003 and serves children from six weeks to ten years old. Of particular concern to Bell was the proximity of the dumpsters, fuel vent, air vacs, and fuel tanks to the childcare center for noise and aesthetic reasons. Further, Bell testified that there were security concerns related to the proximity of the parking spots for the 7-Eleven to the center because of concerns that children from the center could be struck by vehicles. He stated that if the 7-Eleven were to be built, the center would be required to expend resources on additional security measures.

---

[3] 7-Eleven also evaluated the site proposed by HVB and determined that it failed to meet their own development standards in several respects.

At the conclusion of testimony and after reviewing the declaration and all other relevant evidence, the trial court concluded that the declaration provides the ARB broad powers to regulate property use in the community; to promulgate development guidelines to promote harmony within the development; and to deny applications that are contrary to those guidelines. The parties submitted post-trial briefings in lieu of closing arguments, and the trial court issued a letter opinion finding in favor of Harbour View on March 23, 2023. This appeal follows.

## II. ANALYSIS

HVB assigns error to the trial court's ruling in favor of Harbour View, asserting that: (1) the circuit court (a) erroneously ruled that the association's architectural review board had the power to review, control, or regulate the uses of land, and not merely the power to control architectural design of buildings; (b) erroneously ruled that the architectural review board's denial of 5800 HVB's application was not arbitrary and capricious[4]; and (c) erroneously held that the board properly denied the application based on the developmental use of the property; and (2) the circuit court erroneously ruled that the board's unpublished and unrecorded guidelines encumber the subject property.[5]

### A. Standard of Review

"The proper construction of restrictive covenants is a question of law that we review de novo." *Sainani v. Belmont Glen Homeowners Ass'n, Inc.*, 297 Va. 714, 722 (2019). In keeping

---

[4] Under Rule 5A:20(e), the opening brief of the appellant must contain the standard of review and argument, including principles of law and authorities. HVB provided this court with no legal authority or standard of review pertaining to assignment of error 1(b) in its opening brief and has therefore waived this assignment of error.

[5] At trial, HVB did not request that the trial court decide whether the Guidelines were inapplicable on the basis that they were unrecorded. Ultimately, the trial court made no ruling on the issue. Therefore, HVB failed to preserve this issue for appellate review and waived it by failing to obtain a ruling. Rule 5A:18; *Amos v. Commonwealth*, 61 Va. App. 730, 745 (2013), *aff'd*, 287 Va. 301 (2014) ("Where a party fails to obtain a ruling on a matter presented to a trial court, there is nothing for this Court to review on appeal.").

- 5 -

with Virginia's common-law traditions, courts have consistently applied the principle of strict construction to restrictive covenants. *Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 275 (2016). Virginia courts should "enforce restrictive covenants where intention of the parties is clear and the restrictions are reasonable" and "if it is apparent from a reading of the whole instrument that the restrictions carry a certain meaning by definite and necessary implication." *Shepherd v. Conde*, 293 Va. 274, 288 (2017).

*B. The ARB had the power to review, control, or regulate the uses of land within the Harbour View Commerce Center.*

HVB makes one argument on appeal related to the ARB's power to review, control, or regulate the uses of land within the Harbour View Commerce Center: that the declaration only empowered the ARB to approve or reject site development plans based on consideration of "conformity and harmony of *external design* with neighboring Lots and types of operations and uses thereof." HVB contends that the express grant of power to the ARB in the declaration is more limited than what the trial court interpreted it to mean, allowing the ARB only to consider the uses of the *neighboring lots*, not the proposed use of the new property. We reject this contention.

We agree, instead, with Harbour View that the declaration vests the ARB with the power to decide whether a proposed use is appropriate for the Commerce Center. Section 1.2 of the declaration states that:

> [i]t is the purpose of this Declaration to create a planned commercial development of high quality, to assure the orderly and attractive development of the Property in an efficient and harmonious manner, to preserve and enhance property values, amenities and opportunities within the Property, to promote the health and safety of the Occupants and to maintain a harmonious relationship among the structures and the natural vegetation and topography thereon. This Declaration is designed to complement the Zoning Ordinance and other Laws, and where conflicts occur, the more restrictive requirement shall prevail.

Additionally, Section 5.3 of the declaration states that owners are required to "prepare and submit to the [ARB] such Owner's final Plans including detailed information in writing regarding the proposed use of the Lot." In detailing the approval and disapproval standards of the ARB, Section 5.4 of the declaration states, in relevant part, that the ARB, in its sole discretion:

> may base its approval or disapproval on, among other things, the architectural design concept, the adequacy of Lot dimensions, conformity and harmony of external design with neighboring Lots and types and operations and uses thereof, . . . conformity to the overall plans of the development of the Property, conformity of the Plans to the purpose and general plan and intent of this Declaration and such other factors as the Architectural Review Board, in its sole discretion, deems relevant.

HVB improperly focuses its argument on the fact that as an *architectural* review board, the ARB should make determinations based solely on the "harmony of *external* design with neighboring Lots" and not the proposed land usage of new properties. However, the declaration clearly vests the ARB with broad powers to approve or deny applications for proposed land usage based on their conformity with the purpose outlined in Section 1.2. The ARB was given the power to promulgate development guidelines consistent with the purpose of promoting harmony in the Property under Section 5.1(b) and to determine what proposed uses may create "objectionable noise, smoke, odors, or which in any other way . . . will constitute a nuisance or degrade the value of the Property" under Section 8.6 of the declaration. These restrictions on the Harbour View Commerce Center make clear the intention to create a harmonious community when the Harbour View Commerce Center was established, and Section 5.3 of the declaration effectively provided HVB with notice that their proposed usage would be reviewed by the ARB. Additionally, reading the declaration as a whole, it is clear that the restrictions carry a certain meaning, namely "to create a planned commercial development of high quality" and "to maintain a harmonious relationship among the structures." Subsequently, the declaration establishes that

- 7 -

the ARB, in its discretion, is charged with enforcing these restrictions in order to achieve the declaration's stated purpose. Therefore, the ARB did have the power to review, control, and regulate the uses of land within the Harbour View Commerce Center.

*C. The ARB properly denied HVB's application based on the developmental use of the property.*

Having determined that the ARB was vested with the power to review, control, and regulate the uses of land within the Harbour View Commerce Center, we turn now to the issue of whether the ARB's denial of HVB's application was proper.

HVB argues that the ARB's denial of its application based on the proposed use of the property, a usage permitted by right under the UDO without any conditional use permit, is without authority. This assertion is based on the "Permitted Uses" definition supplied in Exhibit C which states that "[t]he property may be used for any use which is unconditionally permitted under the current B-2 zoning classification of the Suffolk Zoning Ordinances without any requirement for a use permit, without the prior written approval of Declarant or its successors or assigns." The Declarant, Harbourview Partners, no longer has any interest in the Harbour View Commerce Center and the parties agree that neither Harbour View or the ARB are successors or assigns of the Declarant. However, Exhibit C establishes only that the permitted uses of property within the Harbour View Commerce Center *may* be those permitted under the current B-2 zoning classification. Reading this exhibit in conjunction with the declaration as a whole, it is clear that the intent was to establish a "harmonious relationship among the structures" within the Property and simply because a proposed use may be permitted under the B-2 zoning classification, does not mean that it would be in harmony with the other structures on the Property. Section 3 of the Development Guidelines promulgated by the ARB states in relevant part that "[a]ll of the building sites are to be used for offices, display rooms, general administration, lodging (but not residences), light manufacturing, assembling or producing, wholesaling, warehousing, and

businesses of a kindred nature." HVB asserts that under the express terms of the declaration, based upon the "Permitted Use" definition in Exhibit C and given that its proposed use is authorized by the UDO, the development of a gas station and convenience store is permitted by right and the ARB lacks any authority to otherwise deny that usage. We reject this assertion.

As referenced above, Section 1.2 of the declaration states, in relevant part, that it "is designed to complement the Zoning Ordinance and other Laws, and *where conflicts occur, the more restrictive requirement shall prevail*." (Emphasis added). Additionally, Section 8.6 of the declaration states that

> [n]otwithstanding approval from any Government Entity, or the fact that the use in question is a Permitted Use, no use or operation will be permitted which creates objectionable noise, smoke, odors or which in any other way, in the opinion of the Architectural Review Board, will constitute a nuisance or degrade the value of the [Harbour View Commerce Center].

Though the land is zoned B-2, which allows for commercial use including gas stations and convenience stores, the declaration allows for further limitations on permitted land usage within the Harbor View Commerce Center. Looking to Section 5.4 of the declaration first, the ARB properly denied HVB's application when it considered the usage of the neighboring lots, namely the childcare center adjacent to HVB's parcel. Further, applying Section 8.6 of the declaration, the ARB properly denied HVB's application because the presence of a gas station and convenience store on the parcel would create noise and odors which, in the opinion of the ARB, would constitute a nuisance. Therefore, the ARB properly denied HVB's application based on the developmental use of the property and, subsequently, the trial court did not err in finding in favor of Harbour View.

## III.  CONCLUSION

The trial court did not err in finding in favor of Harbour View as the ARB was authorized to reject HVB's plans to develop its property within the Harbour View Commerce Center.

*Affirmed.*