COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, McCullough and Senior Judge Annunziata
Argued at Alexandria, Virginia

UNPUBLISHED

RICHARD CALVIN HARRIS

MEMORANDUM OPINION[*] BY
v.      Record No. 1865-12-4          JUDGE STEPHEN R. McCULLOUGH
                                      MARCH 25, 2014
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

John A. Keats (Keats & Meleen, PLC, on brief), for appellant.

David M. Uberman, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Following a jury trial, Richard Calvin Harris was convicted for driving under the

influence of alcohol, after having been convicted twice before within a five-year period of the

offense. He argues the evidence was insufficient to establish that his blood alcohol level was

0.08 at the time he was driving. We find no error and affirm his conviction.

BACKGROUND

Around 2:30 a.m. on December 12, 2010, in the area of Route 50 and Muirfield Drive,

Officer Chris Walczyk observed a car traveling approximately 60 miles per hour in an area

where the posted speed limit is 45 miles per hour. He followed the vehicle. He noticed that

appellant's vehicle swerved out of the left side of the lane three times. In two of those instances,

the vehicle stayed out of its lane for an "extended time." The first two times, the tire came over

his lane of travel "slightly," about 12 inches. This lasted for about two or three seconds. The

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

third time, "the tire left the entire line [in]to the lane next to it and came back." This swerving occurred over a distance of approximately one mile and a half. Based on these observations, Officer Walczyk stopped the vehicle. He testified that "[i]t took [appellant] a little while to stop," but that he did so with "no problems." The location of the stop is about 20 to 30 minutes from Washington, D.C., depending on the route taken.

Appellant was the driver and the only person in the car. He had bloodshot eyes. Officer Walczyk acknowledged that appellant had bloodshot eyes on the date of trial, but Walczyk stated that "[h]is eyes are not nearly as bloodshot today as they were before." The officer noticed an odor of alcohol. This odor came from appellant rather than from his vehicle. He was uneasy on his feet. It was undisputed that appellant suffers from a bad hip and that this affects his gait. The officer testified, however, that although appellant walks with a limp, he was more unsteady on his feet the night of the stop than he usually is due to his limp. Appellant did not have a valid driver's license. Appellant indicated he had consumed two glasses of champagne, but later said instead that he had two glasses of beer. He stated that he was coming from a speaking engagement in Washington, D.C. Officer Walczyk arrested appellant. Appellant stated that he was lost and did not know where he was. Appellant called a number of witnesses who explained that he suffers from dementia and sometimes forgets where he is.

Due to the high demand for breath tests that morning, a line had formed, and the test did not occur until 4:48 a.m. Appellant registered a 0.08 score on the breath alcohol test.

Appellant offered the testimony of Richard J. McGarry as an expert in forensic toxicology. McGarry testified that it is not possible to determine whether the alcohol concentration at 4:48 a.m. was higher or lower two hours before. He stated that to determine the breath alcohol concentration two hours before a test, one would need to know how the person

had been drinking, when the person finished drinking, their sex, size, what they drank, the age of the person, and whether the test-taker had been eating.

In rebuttal, the Commonwealth called Alka Lohmann, the Program Manager for Calibration and Training at the Breath Alcohol Laboratory operated by the Department of Forensic Science. Lohmann explained that a driver with an intoxication level of 0.08 may show certain outward signs of intoxication. Such a driver would suffer from deficits in tracking, "which is their ability to keep their vehicle in its lane in relation to other vehicles." In addition, their reaction time would be decreased. She agreed with McGarry that the way alcohol is consumed can affect how it is absorbed in the bloodstream. If someone drinks a large amount of alcohol quickly, the body does not have time to absorb the alcohol into the bloodstream as it is being consumed. In such a scenario, it could take up to an hour to reach the peak breath alcohol concentration, or BAC. In contrast, in social drinking situations, where alcohol is consumed at a slower pace, the peak BAC would typically be obtained within 30 minutes of the last sip of alcohol. Lohmann also stated that an individual who weighs 165 pounds would not reach a 0.08 BAC after consuming two ordinary beers. She further agreed with McGarry concerning the factors that influence the relationship between BAC at the time of the test and at the time of the driving behavior: specifically, the time of the last drink in relation to the time of the test and the time of the driving, as well as what kind of drink the person consumed.

Lohmann explained that once someone has become "post-absorptive," i.e., the body is only getting rid of alcohol, the alcohol will be eliminated at a rate of 0.015 to 0.02 of their BAC each hour. Because appellant was waiting for two hours to take the breath test and did not consume alcohol in that time, he would have eliminated between 0.03 and 0.04 of his BAC during this time. Finally, Lohmann stated that a test taken later in time by a post-absorptive individual would be favorable to the subject of the breath test because such an individual would

- 3 -

be "on their way down . . . in their BAC curve." She conceded on cross-examination that there is no way of telling what appellant's BAC was at the time of the driving conduct.

ANALYSIS

On appeal, a reviewing court does not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original, citation omitted). Instead, we ask only "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 449, 502 (2008) (quoting Jackson, 443 U.S. at 319) (emphasis in original). An appellate court is "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate judges have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).

Code § 18.2-266 provides that

> [i]t shall be unlawful for any person to drive or operate any motor vehicle . . . while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article . . . .

We examined this statute in Davis v. Commonwealth, 8 Va. App. 291, 381 S.E.2d 11 (1989), and concluded that

> the inquiry under Code § 18.2-266(i) is not whether a driver was in fact "under the influence of alcohol" to a degree that his ability to drive safely was affected; rather, the issue is whether at the time he was driving his blood alcohol concentration was at least [0.08%] as measured by a subsequently administered chemical test.

Id. at 298, 381 S.E.2d at 15 (emphasis omitted). Code § 18.2-269(A)(3) further provides that

> [i]f there was at that time 0.08 percent or more by weight by volume of alcohol in the accused's blood or 0.08 grams or more

per 210 liters of the accused's breath, it shall be presumed that the accused was under the influence of alcohol intoxicants at the time of the alleged offense.

In Yap v. Commonwealth, 49 Va. App. 622, 643 S.E.2d 523 (2007), we held that this "presumption" should be construed as a permissive inference.

Appellant argues that the Commonwealth had to prove his BAC at the time of driving and that it failed to do so. In particular, he points to Lohmann's testimony that she could not determine his BAC at the time of driving. He concludes that the Commonwealth relied solely on the inference in Code § 18.2-269(A)(3) without "a shred" of evidence supporting it.

We begin with the results of the test. Appellant produced a breath alcohol concentration of 0.08 at 4:48 a.m. He was stopped at 2:30 a.m. The facts indicate appellant did not drink any alcohol between 2:30 a.m. and 4:48 a.m. According to Officer Walczyk, at the time of day appellant was driving, it would take 20 to 30 minutes to travel from the District of Columbia to the location of the stop. There is no evidence appellant was drinking in his car. The car did not smell of alcohol, although appellant did. During this approximately two-and-a-half-hour span between the stop and the test, appellant did not consume any alcohol. According to the evidence, his body was ridding itself of between 0.015 and 0.02 of alcohol concentration during each passing hour.

Furthermore, if appellant was drinking socially rather than binge drinking, as would likely be the case if appellant was speaking at a social event, his peak BAC would be reached sometime between the last sip of alcohol and one half hour afterwards. But even for persons who had rapidly consumed alcohol, the peak BAC would be reached within one hour. Appellant was tested well after an hour after his last sip of alcohol. The evidence, therefore, supports a conclusion by the factfinder that his BAC was higher at the time he was driving than at the time of testing.

- 5 -

Lohmann also testified to some of the behaviors that a driver at a 0.08 level of impairment might exhibit. She explained that a driver who is intoxicated at that level would likely display deficits in tracking his vehicle. Appellant swerved three times over a one-and-a-half-mile stretch of road. She also noted that a driver with a 0.08 BAC would exhibit a delayed reaction time. Officer Walczyk testified that, although appellant did stop his vehicle, "it took him a little while to stop." Finally, the jury also could deduce from all the evidence that his excessive rate of speed was a symptom of his intoxication.

Further confirming this conclusion is the fact that appellant's breath smelled of alcohol, he was unsteady on his feet, and he had bloodshot eyes, all commonsense indications of alcohol-related impairment. True, appellant often had bloodshot eyes and his bad hip caused him to walk with a limp. Nevertheless, the jury could credit Officer Walczyzk's testimony that appellant's eyes were more bloodshot than usual on the night of his arrest and that his unsteadiness on his feet was more pronounced than ordinary.

"While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (quotations omitted). On these facts, the jury had evidence before it to enable it to draw an inference that even if the Commonwealth could not pinpoint appellant's precise BAC, the jury could conclude that his actual BAC at the time he was driving would have been *higher* than the 0.08 level at which he tested several hours later.

CONCLUSION

We affirm the judgment of the trial court.

Affirmed.